B1 (Official Form 1)(04/13)

| United States Bankruptcy Court<br>District of Nevada | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**VERIS GOLD CORPORATION** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all) | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**900-688 West Hastings Street,**<br>**Attn: Shaun Heinrichs**<br>**Vancouver BC V6B 1P1, Canada**                    ZIP Code | Street Address of Joint Debtor (No. and Street, City, and State):                    ZIP Code |
| County of Residence or of the Principal Place of Business: | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

### Type of Debtor
(Form of Organization) (Check one box)
- ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*
- ■ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

### Nature of Business
(Check one box)
- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ■ Other

### Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box)
- ☐ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ■ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

### Chapter 15 Debtors
Country of debtor's center of main interests:
**Canada**

Each country in which a foreign proceeding by, regarding, or against debtor is pending:
**Canada**

### Tax-Exempt Entity
(Check box, if applicable)
- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

### Nature of Debts
(Check one box)
- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ■ Debts are primarily business debts.

### Filing Fee (Check one box)
- ■ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

### Statistical/Administrative Information
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ |

Estimated Liabilities

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ |

### Chapter 11 Debtors

B1 (Official Form 1)(04/13)                                                                                                    Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **VERIS GOLD CORPORATION** |

### Signatures

#### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

#### Signature of Attorney*

X _____
Signature of Attorney for Foreign Representative

**Brett A. Axelrod 5859**
Printed Name of Attorney for Foreign Representative

**Fox Rothschild LLP**
Firm Name

**3800 Howard Hughes Parkway Suite 500**
**Las Vegas, NV 89169**

_____
Address

**Email: baxelrod@foxrothschild.com**
**(702) 262-6899  Fax: (702) 597-5503**
Telephone Number

**June 9, 2014**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

#### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

#### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

■ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

**Kevin Brennan, Ernst & Young, Inc., Senior Vice President**
Printed Name of Foreign Representative

**June 9, 2014**
Date

#### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JUN 08 2014

ENTERED

SUPREME COURT
OF BRITISH COLUMBIA

SEAL

VANCOUVER
REGISTRY

S- 144431

No. _____
**Vancouver Registry**

## IN THE SUPREME COURT OF BRITISH COLUMBIA

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND

### IN THE MATTER OF THE *CANADA BUSINESS CORPORATIONS ACT*, R.S.C. 1985, c. C-44

### AND

### IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*, S.B.C. 2002, c.57

### AND

### IN THE MATTER OF VERIS GOLD CORP., QUEENSTAKE RESOURCES LTD., KETZA RIVER HOLDINGS LTD., and VERIS GOLD U.S.A., INC.

**PETITIONERS**

### <u>INITIAL ORDER</u>

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| MADAM JUSTICE FITZPATRICK | ) | 09/JUN/2014 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 9th day of June, 2014 (the "**Order Date**"); AND ON HEARING Magnus Verbrugge and William Skelly, counsel for the Petitioners and those other counsel listed on Schedule "A" hereto; AND UPON READING the material filed, including the First Affidavit of Shaun Heinrichs sworn June 8, 2014, the First Affidavit of Elly Bahrami sworn June 9, 2014; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "CCAA"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court;

- 2 -

THIS COURT ORDERS AND DECLARES THAT:

**JURISDICTION**

1.      The Petitioners are companies to which the CCAA applies.

**SUBSEQUENT HEARING DATE**

2.      The hearing of the Petitioners' application for an extension of the Stay Period (as defined in paragraph 16 of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at 9:45am on Tuesday, the 8th day of July 2014,  or such other date as this Court may order.

**PLAN OF ARRANGEMENT**

3.      The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

4.      Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of its current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"), and continue to carry on its business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the Property.  The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

- 3 -

## CASH MANAGEMENT SYSTEM

5.    The Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the Affidavit of Shaun Heinrichs sworn June 8, 2014 or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.    Subject to the consent of the Monitor, the Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

    (a)    all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");

    (b)    all amounts owing to or in respect of individuals working as independent contractors in connection with the Petitioners' Business;

    (c)    the fees and disbursements of any Assistants retained or employed by the Petitioners or the Monitor which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the fees and disbursements

- 4 -

of legal counsel retained by the Petitioners, the Monitor and the Directors, whenever and wherever incurred, in respect of:

(i)    these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

(ii)    any litigation in which the Petitioners are named as a party or is otherwise involved, whether commenced before or after the Order Date; and

(iii)    any related corporate matters; and,

(d)    all amounts owing for goods and services actually supplied, both prior to and subsequent to the Order Date, to the Petitioners:

(i)    by reagent suppliers, mining contractors, utilities, fuel suppliers and coal suppliers with the prior consent of the Monitor, if, in the opinion of the Petitioners and the Monitor the supplier is critical to the business and ongoing operations of any of the Petitioners and the payment is required to ensure ongoing supply;

(ii)    by freight and logistics suppliers, third party customs brokers, agents, freight carriers, freight forwarders, warehousemen and shippers with the prior consent of the Monitor, if, in the opinion of the Petitioners and the Monitor, the party providing the good or service is critical to the business and ongoing operations of any of the Petitioners and the payment is required to ensure ongoing supply;

(iii)    by other parties providing goods or services with the prior consent of the Monitor, if, in the opinion of the Petitioners and the Monitor the supplier or service provider is critical to the Business and ongoing operations of any of the Petitioners and the payment is required to ensure ongoing supply;

- 5 -

(e)     with the prior consent of the Monitor, all amounts owing to creditors who, prior to the Order Date, lawfully retained Property or exercised valid and enforceable possessory liens against any asset of the Petitioners where the value of such asset exceeds the amount of the possessory or statutory liens or where the asset is deemed critical by the Petitioners and the Monitor to the Business of the Petitioners; and,

(f)     any amounts payable in respect of customs and duties.

7.      The Petitioners shall be subrogated to the rights of any creditor receiving payment pursuant to paragraph 6(d), 6(e) and 6(f) of this Order in the amount of the payment(s) (the total amount paid to such party constituting a **"Critical Supplier Claim"**). Each such Critical Supplier Claim shall be deemed to be assigned to the Petitioners for all purposes and the Petitioners shall be entitled to vote the Critical Supplier Claims in any Plan.

8.      Except as otherwise provided herein, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $150,000 shall be approved by the Monitor;

(b)     all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

- 6 -

(c) fees and disbursements of the kind referred to in paragraph 6(c) which may be incurred after the Order Date.

9. The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b) all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

10. Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not

- 7 -

in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

11. Except as specifically permitted herein, the Petitioners are hereby directed, until further Order of this Court:

    (a)    to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of its creditors as of the Order Date except as authorized by this Order;

    (b)    to make no payments in respect of any financing leases which create security interests;

    (c)    to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of its Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

    (d)    to not grant credit except in the ordinary course of the Business only to its customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

    (e)    to not incur liabilities except in the ordinary course of Business.

**RESTRUCTURING**

12. Subject to such requirements as are imposed by the CCAA, the Petitioners shall have the right to:

    (a)    permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $50,000 in any one transaction or $250,000 in the aggregate;

- 8 -

(b)  terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate;

(c)  disclaim, in whole or in part, with the prior consent of the Monitor or further Order of the Court, such of their arrangements or agreements of any nature whatsoever with whomsoever, whether oral or written, as the Petitioners deem appropriate, in accordance with Section 32 of the CCAA, with such disclaimers to be on such terms as may be agreed upon between the Petitioners and such counter-parties or, failing such agreement, to deal with the consequences thereof in the Plan; and

(d)  pursue all avenues of refinancing for its Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13.    The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties.  If a Petitioner disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14.    If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased

- 9 -

premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

15.    Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, is permitted to, and hereby shall, disclose personal information of identifiable individuals in its possession or control to stakeholders, its advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement.  Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it.  If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

- 10 -

## STAY OF PROCEEDINGS, RIGHTS AND REMEDIES

16.     Until and including July 8, 2014, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

17.     During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

18.     During the Stay Period, Deutsche Bank AG ("**Deutsche Bank**") is prohibited, stayed and restrained from exercising any rights of realization against the Property. ✱

19.     Nothing in this Order, including paragraphs 16, 17 and 18, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

✱; provided that this paragraph 18 shall be without prejudice to the right of Deutsche Bank to apply to lift the stay of proceedings or to seek a declaration of this court that it is not so prohibited, stayed or restrained to the extent that any of its agreements with the Petitioners are declared to be "eligible financial contracts" as defined in the CCAA. A-

**NO INTERFERENCE WITH RIGHTS**

20.    During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioners, except with the written consent of the Petitioners and the Monitor or leave of this Court.

**CONTINUATION OF SERVICES**

21.    During the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioners, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

22.    Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

- 12 -

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

23.    During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

24.    The Petitioners shall indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

25.    The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000, as security for the indemnity provided in paragraph 24 of this Order. The Directors' Charge shall have the priority set out in paragraph 37 herein.

26.    Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy,

- 13 -

or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 24 of this Order.

## APPOINTMENT OF MONITOR

27.    Ernst & Young Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

28.    The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

    (a)    monitor the Petitioners' receipts and disbursements;

    (b)    report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

    (c)    assist the Petitioners, to the extent required by the Petitioners, in its dissemination of information to parties, including a lender providing debtor-in-possession financing, should such financing be obtained;

    (d)    advise the Petitioners in its preparation of the Petitioners' cash flow statements which information shall be reviewed with the Monitor;

    (e)    advise the Petitioners in its development of the Plan and any amendments to the Plan;

- 14 -

(f)    assist the Petitioners, to the extent required by the Petitioners, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)    have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(h)    be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(i)    provide information and report to Deutsche Bank as may be reasonably requested by Deutsche Bank or the Petitioners from time to time; and

(j)    perform such other duties as are required by this Order or by this Court from time to time.

29.    The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

30.    Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, **"Possession"**) of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other

- 15 -

contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

31.    The Monitor shall provide any creditor of the Petitioners with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

32.    In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

**ADMINISTRATION CHARGE**

33.    The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings. The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers in the aggregate amount of

- 16 -

$475,000 to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

34.     The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court and may be heard on a summary basis.

35.     The Petitioners are authorised to continue the engagement of Raymond James & Associates Inc. ("**Raymond James**") as financial advisor to the Petitioners and Raymond James shall be paid its reasonable fees and disbursements in accordance with the terms agreed between the Petitioners and Raymond James (the "**Raymond James Engagement Letter**").

36.     The Monitor, counsel to the Monitor, if any, counsel to the Petitioners  and Raymond James shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $1,500,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel or, in the case of Raymond James, in accordance with the terms of the Raymond James Engagement Letter, both before and after the making of this Order which are related to the Petitioners' restructuring.  The Administration Charge shall have the priority set out in paragraphs 37 and herein.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

37.     The priorities of the Administration Charge and the Directors' Charge and as among them shall be as follows:

     First – Administration Charge (to the maximum amount of $1,500,000);

     Second - Directors' Charge (to the maximum amount of $500,000).

38.     Any security documentation evidencing, or the filing, registration or perfection of, the Administration Charge and the Directors' Charge (together, the "**Charges**") shall not be required, and that the Charges shall be effective as against the Property and shall be valid and

enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

39.     Each of the Administration Charge and the Directors' Charge (all as constituted and defined herein) shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person.

40.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtains the prior written consent of the Monitor and the beneficiaries of the Administration Charge and the Director's Charge.

41.     The Administration Charge and the Director's Charge  shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; or (d) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

    (a)     the creation of the Charges shall not create or be deemed to constitute a breach by the Petitioners of any Agreement to which it is a party; and

- 18 -

(b)      the payments made by the Petitioners pursuant to this Order and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

42.    Any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

## SERVICE AND NOTICE

43.    The Monitor shall (i) without delay, publish in the National Post, the Vancouver Sun and the Reno Gazette Journal a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $5000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

44.    The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

45.    Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the **"Service List"**) to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: http://documentcentre.eycan.com/verisgold

www.ey.com/ca/verisgold

- 19 -

46.    Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: ~~http://documentcentre.eycan.com/verisgold~~ www.ey.com/ca/verisgold.

47.    Notwithstanding paragraphs 43 and 44 of this Order, service of the Petition, the Notice of Hearing of Petition, the Affidavit #1 of Shaun Heinrichs this Order and any other pleadings in this proceeding (collectively, the "**Materials**"), shall be made on the federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

48.    The Petitioners or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

49.    Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

50.    This Court requests the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any Federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

51.    Each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located,

for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1532, as amended.

52.    For the purposes of any applications authorised by paragraph 51, the centre of main interest of the Petitioners is located in British Columbia, Canada.

53.    The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determines that such a filing is appropriate.

54.    The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

55.    Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

56.    Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

57.    Endorsement of this Order by counsel appearing on this application is hereby dispensed with.

- 21 -

58.    This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_____

Signature of Magnus Verbrugge
☐ Party   ☑ Lawyer for the Petitioners

BY THE COURT

_____

REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.

This ___9___ day of __JUNE__ 20_14_

_____

Authorized Signing Officer

- 22 -

## Schedule "A"

| Counsel Name | Party Represented |
|---|---|
| John Sandrelli | Ernst & Young Inc. |
| David Brown | Deutsche BANK A.G. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |