CHARLES AXELROD, ESQ.
*[Pro Hac Vice Pending]*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      caxelrod@foxrothschild.com
      mmoore@foxrothschild.com
*Counsel for Ernst & Young, Inc. as Foreign*
*Representative of Veris Gold Corp. et al.*

Electronically Filed June 9, 2014

### UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 14- |
| | (Joint Administration Requested) |
| VERIS GOLD CORP.,[1] | Chapter 15 |
| Debtors in a Foreign Proceeding. | **VERIFIED PETITION FOR RECOGNITION AND CHAPTER 15 RELIEF** |

    Ernst & Young, Inc. ("E&Y" or the "Foreign Representative"), in its capacity as the foreign

representative of the above-captioned debtors (collectively, the "Debtors" or the "Veris Gold Group"),

with reorganization proceedings (the "Canadian Proceeding") under Canada's *Companies' Creditors*

*Arrangement Act,* R.S.C. 1985, c. C-36, (as amended, the "CCAA") currently pending before the

Supreme Court of British Columbia, Canada, Vancouver Registry (the "Canadian Court"), respectfully

submits this petition (the "Petition") seeking entry of an order, substantially in the form attached hereto

---

[1]     The Debtors, along with the last four digits of each U.S. Debtors' federal tax identification number, if any, are: Veris Gold Corp. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number), Queenstake Resources Ltd. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number), Ketza River Holdings Ltd. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number), and Veris Gold U.S.A., Inc. (6862). The location of the Debtors' corporate headquarters and the service address for all of the Debtors is: 900-688 West Hastings Street, Vancouver BC V6B 1P1, Canada, Attn: Shaun Heinrichs.

1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

as <u>Exhibit A</u>, granting: (a) recognition by this Court of the Foreign Representative as the Debtors' "foreign representative" as defined in section 101(24) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"); and (b) recognition of the Canadian Proceeding as a "foreign main proceeding" pursuant to sections 1515, 1517, and 1520 of the Bankruptcy Code.[2]

<u>**Preliminary Statement**</u>

1.    The Debtors are a consolidated business enterprise comprising various exploration, mining, production, sales, and distribution operations in Canada and the United States. Due to several factors including the Debtors' existing capital structure, the bid environment in the mining and metals industry, Veris Gold Corp.'s depressed share price and the current commodity pricing environment, the Debtors need to restructure their business to emerge as a viable and successful entity going forward.

2.    To preserve value while determining and effectuating various strategic options, on June 9, 2014, the Debtors commenced the Canadian Proceeding.[3] On June 9, 2014, the Canadian Court issued an initial order staying certain creditor actions, appointing E&Y as the monitor of the Debtors in the Canadian Proceeding and authorizing the Foreign Representative to apply for relief in this Court pursuant to chapter 15 of the Bankruptcy Code.[4]

3.    In addition to the protection provided in the Canadian Court's order, the Debtors require the protection afforded to foreign debtors pursuant to chapter 15 of the Bankruptcy Code for their assets located in the United States. As more fully described in the *Heinrichs Declaration*, the Debtors require certain chapter 15 protections to stay any and all enforcement actions against the Debtors and their assets in the United States, which would threaten to disrupt the operation of their business and ultimately the orderly restructuring in the Canadian Proceeding. The Debtors also require the protections of chapter 15 to ensure smooth operations without disruption during the pendency of their restructuring in the Canadian Proceeding.

---

[2]    In support of the Petition, the Foreign Representative has filed contemporaneously herewith the *Declaration of Shaun Heinrichs in Support of Petition for Recognition and Chapter 15 Relief (the "*<u>Heinrichs Declaration</u>") and the *Declaration of Shaun Heinrichs Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* (the "<u>1515 Declaration</u>"), which are incorporated herein by reference.

[3]    A true and correct copy of the application commencing the Canadian Proceeding is attached hereto as <u>Exhibit C</u>.

[4]    A true and correct certified copy of the initial order approved by the Canadian Court is attached hereto as <u>Exhibit D</u>.

2

ACTIVE 25923708v1 00/00/0000 0:00 AM

4.      To better facilitate an efficient corporate restructuring in the Canadian Proceeding, pursuant to this Petition, the Foreign Representative now seeks recognition of itself from this Court as the Debtors' "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and of the Canadian Proceeding as a "foreign main proceeding," within the meaning of section 1502(4) of the Bankruptcy Code.  Contemporaneous with the filing of these Chapter 15 Petitions, the Foreign Representative has filed a *Motion for Entry of an Order Granting Provisional Relief Under Section 1519 of the Bankruptcy Code* seeking entry of an order granting provisional relief pursuant to Sections 105(a) and 1519(a) of the Bankruptcy Code pending this Court's entry of an order recognizing the Canadian Proceeding as a "foreign main proceeding."

### Jurisdiction

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

6.      These cases were properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Canadian Proceeding under section 1515 of the Bankruptcy Code.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1410(1) and 1410(3).

8.      The statutory bases for relief are sections 1504, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

### Background

**I.      The Debtors' History, Business and Operations**

9.      Veris Gold Corp. ("VGC"), a company incorporated in British Columbia, Vancouver, is a public company which shares are traded on the Toronto Stock Exchange and the Frankfurt Exeter Exchange. VGC is the direct parent of Queenstake Resources Ltd., a company incorporated in British Columbia, Vancouver ("Queenstake") and Ketza River Holdings Ltd., a company incorporated in the Yukon Territory ("Ketza").  Veris Gold USA, Inc. (formerly known as Queenstake Resources USA, Inc.), a company incorporated under the laws of the State of Delaware, is a wholly owned subsidiary of Queenstake ("Veris USA").

10.     VGC carries its business and maintains an office in the City of Vancouver, British Columbia.  Head office functions for all members of the Veris Gold Group are provided from VGC's

3

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    offices in Vancouver, where corporate operations are directed and controlled. The Debtors' banking,

2    corporate accounting, corporate finance, shareholder relations, international relations, taxation, audit

3    and business strategy functions are directed by and carried out by VGC in Vancouver, British

4    Columbia.

5        11.    Limited management functions, including payroll, plant and mine management for Veris

6    USA are provided in Nevada, largely done at site with support from a small office located in Elko,

7    Nevada.  Veris USA owns and operates a gold mine which is currently in production (the "Gold

8    Mine"). It also owns patented and unpatented land claims, a plant of approximately 35,000 square feet,

9    equipment, real estate and other assets in the State of Nevada.  The Gold Mine is located at Jerritt

10   Canyon, in Elko County, Nevada.  The Jerritt Canyon property includes several underground gold

11   mines.

12       12.    Ketza is incorporated and carries on its business in the Yukon Territory in Canada, as a

13   gold and silver exploration company. It owns land claims and the mining property is primarily in the

14   development and preproduction phase.

15       13.    In 2013, VGC commenced gold production at the Starvation Canyon mine, the third

16   underground gold mine located at the south end of Jerritt Canyon and announced the development of a

17   fourth underground mine, with production expected to start in 2014. Also, in 2013, VGC entered into a

18   toll milling agreement with Newmont USA Ltd.  As a result of the toll milling opportunities, the Veris

19   Gold Group mill has excess capacity.

20       14.    VGC employs 9 salaried employees and one executive in Canada.  The senior

21   management of the Debtors is located in Vancouver, Canada.  In addition, Veris USA employs

22   approximately 280 employees in Nevada.

23   **II.    The Debtors' Capital Structure**

24   _Deutsche Bank Gold Purchase Agreements_

25       15.    Veris USA entered into two Forward Gold Purchase Agreements with Deutsche Bank

26   AG, London Branch ("Deutsche Bank"), which are guaranteed by VGC, Queenstake and Ketza.  Under

27   the Purchase Agreements, Deutsche Bank advances funds to the Debtors and, in exchange, has the right

28   to purchase gold from the Debtors over time in the future at a discount.  The amount of gold, the time

ACTIVE 25923708v1 00/00/0000 0:00 AM

1    frames for purchase and the discount to be applied were set out in the applicable agreement.

2    Effectively, the funds Deutsche Bank paid were a partial advance for gold to be supplied in the future.

3    The terms of the Purchase Agreements operated to give Deutsche Bank a fixed return, except where the

4    price was outside of specified minimum and maximum prices.

5          16.      Under the minimum pricing, if the market price of gold was the minimum price ($850

6    per ounce) or less, the Deutsche Bank purchase price would be $0 and Veris Gold Group was not

7    required to rebate Deutsche Bank the difference between the market price of gold and the minimum

8    price under the contract. Under the maximum pricing, the contract specified a cap amount. If the

9    market price of gold exceeded the maximum price, Deutsche Bank was not required to pay any amount

10    above the maximum price to the Veris Gold Group. The minimum and maximum prices in each of the

11    Purchase Agreements were outside the range of prices at which gold had traded for several years prior.

12          17.      The first Forward Gold Purchase Agreement dated as of August 12, 2011 (the

13    "August/11 Gold Purchase Agreement") is in the amount of US $120,000,000 and is governed by the

14    laws of the Province of Ontario and the federal laws of Canada.

15          18.      Under the August/11 Gold Purchase Agreement, Deutsche Bank effectively pre-paid

16    $690 per ounce for the 173,880 ounces of gold to be purchased over the life of the contract. Between

17    September 2011 and August 2015, Deutsche Bank is to receive 4,330 ounces of gold each month. In

18    exchange for the gold delivery, Deutsche Bank is to pay the market price, less $850 per ounce, with the

19    maximum price to be paid by Deutsche Bank capped at $1,950 per ounce. The August/11 Gold

20    Purchase Agreement also requires Veris USA to maintain a reserve account balance for the first month

21    through the eighteenth month of the agreement in the amount of US $10,000,000. There is currently US

22    $2,000,000 in the reserve account balance.

23          19.      As security for the obligations under the August/11 Gold Purchase Agreement, Deutsche

24    Bank was granted the following security package: (a) a security agreement providing for liens on all of

25    Veris USA's personal property wherever located; (b) a deed of trust charging Veris USA's claim rights

26    and all personal property; (c) the assignment of leases and rents and fixture filing granted by Veris

27    USA; (d) the guarantees by VGC, Ketza and Queenstake secured by security agreements charging all

28    personal property of VGC and Queenstake; and (e) a pledge of shares of Veris USA, Ketza and

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

5

1  Queenstake. The foregoing security includes the Veris Gold Group's mining properties and, in
2  particular, the Veris USA properties.

3      20.    Veris USA also entered into a second forward gold purchase agreement dated
4  February 7, 2012 with Deutsche Bank (the "February/12 Gold Purchase Agreement," with the
5  August/11 Gold Purchase Agreement, the "Purchase Agreements") in the amount of US $20,000,000,
6  which is also governed by the laws of the Province of Ontario and the federal laws of Canada. Pursuant
7  to the February/12 Gold Purchase Agreement, Deutsche Bank received 40,000,000 warrants to purchase
8  40,000,000 common shares of VGC at an exercise price of $4.40 per common share. Between March
9  2012 and September 2015, Deutsche Bank is to receive 650 ounces of gold per month. In exchange for
10 the gold delivery, Deutsche Bank is to pay the spot price, less $850 per ounce, with the maximum
11 market price to be paid by Deutsche Bank capped at $1,750 per ounce. The security provided for the
12 February/12 Gold Purchase Agreement is the same security as the one was provided in the August/11
13 Gold Purchase Agreement.

14 *General Unsecured Claims*

15     21.    The Debtors have also entered into (i) three convertible debentures with Whitebox
16 Advisors for a respective amount of US $5 million, US $4 million and US $2 million, (ii) a senior
17 unsecured promissory note with 683 Capital in an approximate amount of US $10 million, (iii) a
18 forward gold loan with Monument Mining in an approximate amount of $5.65 million, and (iv) a
19 forward gold loan with Concept Capital in an approximate amount of $17.3 million. The amount of the
20 trade payables for the Debtors is approximately $65 million.

21     22.    Small Mine Development LLC ("Small Mine"), is the underground mine contractor for
22 the Jerritt Canyon property and is owed approximately US $42,000,000 of which US $15,000,000 is
23 over one year past due. Small Mine continues to provide services to Veris USA.

24     23.    As of March 31, 2014, the Debtors have total consolidated assets with a net book value
25 of approximately US $323,000,000, including consolidated current assets of US $38,000,000, and
26 consolidated non-current assets of approximately US $285,000,000. As of March 31, 2014, the Debtors
27 have consolidated liabilities with a net book value of approximately US $282,000,000, including

28

6

ACTIVE 25923708v1 00/00/0000 0:00 AM

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

consolidated current liabilities of US $215,000,000 and consolidated non-current assets of approximately US $67,000,000.

### III.    Events Giving Rise to the Debtors' Restructuring

24.    The Debtors are currently facing financial difficulty because they lack adequate liquidity to satisfy their long term debt obligations.  The existing payment terms to Deutsche Bank and the subordinated debt-holders have placed a significant strain on the Debtors' free cash flow. During the last year, the Debtors' management has pursued a wide variety of cost reduction, financing, and cash generation alternatives in an effort to address the short and long-term liquidity issues of the Debtors. The restructuring initiatives, cost reduction, financing and strategic alternatives included reducing the fixed and operational costs at the Gold Mine, staff reduction, salary and wage reductions, and reduction of employee benefits.  In addition, over the past year, the Debtors engaged a number of independent advisors to assist in refinancing the terms of existing debt facilities to better fund its working capital needs.

25.    On January 28, 2014, February 6, 2014, March 6, 2014, April 4, 2014 and May 7, 2014, Deutsche Bank sent to Veris USA Notices of Defaults under the Purchase Agreements.

26.    Due to the alleged events of default under the Purchase Agreements, the Debtors accelerated plans for refinancing their capital structure through the appointment of a Special Committee comprised of two independent and one non independent director with the mandate to review all options and work with the appointed advisor, Raymond James, to develop and explore various alternatives.

27.    The Debtors have tried unsuccessfully to extend the terms of the existing facilities with Deutsche Bank or otherwise refinance on longer terms and possibly negotiate better terms with the subordinated debt-holders.

28.    On June 3, 2014, Deutsche Bank sent to Veris USA a Notice of Early Termination Date Under the First Forward Agreement and the Second Forward Agreement stating that (i) Deutsche Bank did not receive the Scheduled Monthly Quantity of Gold, as such term is defined in the Purchase Agreements, since December 2013, (ii) Deutsche Bank designates June 3, 2014 as the Early Termination Date under both Purchase Agreements, and (iii) Deutsche Bank requests payment of Early

7

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    Termination Amount in the respective amount of US $12,204,978.98 and US $77,239,320.56 under the

2    Purchase Agreements by June 9, 2014 at 5:00 p.m. Pacific Time.

3    **IV.**    **The Canadian Proceeding**

4         29.    To undertake a comprehensive court-supervised restructuring, the Debtors commenced

5    the Canadian Proceeding pursuant to the CCAA. The Debtors believe they would be unable to service

6    and repay their debts under the Purchase Agreements and other outstanding obligations outside of a

7    court-supervised process under the CCAA. As further described in the Heinrichs Declaration, the

8    CCAA is a Canadian federal statute that enables financially troubled corporations the opportunity to

9    restructure their affairs. By allowing a company to restructure its financial affairs, through a formal

10    "plan of arrangement," the CCAA presents an opportunity for troubled businesses to avoid liquidation

11    and allows such businesses' creditors to receive some distribution for outstanding amounts owing to

12    them, by preserving the going-concern value of the company.

13        **B.**    **Proceedings Under the CCAA**

14         30.    Although previously restricted to larger corporations, the CCAA now provides that any

15    corporation with assets or operations in Canada and with liabilities to creditors in excess of $5 million

16    can commence restructuring proceedings.[5] Proceedings are commenced by filing a written petition in a

17    court with jurisdiction over the applicable debtor entity. Here, the Debtors filed their petition in the

18    Supreme Court of British Columbia, Vancouver Registry in Canada, which had jurisdiction over the

19    Debtors.

20        **C.**    **Stay of Process Under the CCAA**

21         31.    Generally, once a debtor files a CCAA petition, the Canadian court promptly will issue

22    an order giving the company 30 days of protection (often referred to as the "Stay") from its creditors to

23    allow for the preparation of the plan of arrangement.[6] The court has discretion to extend the Stay against

24    creditors upon further application by the company for such extension.[7] Typically, the court will

---

26    [5]   See CCAA § 3(1).

27    [6]   See CCAA § 11.02(1).

28    [7]   See CCAA § 11.02(2).

8

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1   continue the protection beyond the initial 30-day period if the company can demonstrate a high

2   likelihood that it will file a plan of arrangement and that an extension of the Stay would not be

3   prejudicial to the creditors, as a whole.[8]  The CCAA does not limit the number of extensions that can be

4   granted.

5   **D.    The Monitor**

6       32.    A monitor (the "<u>Monitor</u>") is an independent third party appointed by the court to

7   observe the company's ongoing operations and assist with formulating a plan of arrangement.[9]  E&Y

8   has been appointed by the Canadian Court as the Debtors' Monitor in the Canadian Proceeding.

9       33.    A Monitor's duties generally include supervising the debtor company's business and

10  affairs, reporting to the Canadian court on any major events that might impact the viability of the

11  company, assisting the company in the preparation of the plan of arrangement, notifying creditors (and

12  shareholders) of any meetings and tabulating votes at such creditor and shareholder meetings. The

13  Monitor also prepares a report on the plan of arrangement that is usually included in the mailing of the

14  plan.

15  **E.    The Plan of Arrangement**

16      34.    The ultimate goal of a CCAA proceeding is formulation and creditor and court approval

17  of a formal plan of arrangement to restructure the debtor company's obligations. As in United States

18  chapter 11 proceedings, the debtor company in a CCAA proceeding can provide for treatment to

19  creditors that leave such creditors "unaffected" or "unimpaired."

20      35.    Only those creditors that file a formal proof of claim with the Monitor are eligible to vote

21  on any proposed plan. For the plan to be binding on any class of creditors, a majority of the proven

22  creditors voting in that class, by number, along with 2/3 of the proven creditors voting in that class, by

23  dollar value, must vote to accept the plan.[10]  If a class of creditors approves the plan, it is binding on all

24  creditors within the class, subject to the court's final approval and resolution of any objections. Unlike

---

[8]   <u>See</u> CCAA § 11.02(3).

[9]   <u>See</u> CCAA § 11.7(1).

[10]  <u>See</u> CCAA § 11.6(1).

9

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**Basis for Relief**

39.    Relief under chapter 15 prevents dismemberment of U.S. or non-U.S. business assets through actions commenced in the U.S. and ensures that disruptions that otherwise could derail a party's foreign restructuring are avoided.

40.    Consistent with these principles, the Foreign Representative commenced the Chapter 15 Cases to obtain full recognition and enforcement of the Canadian Proceeding in the United States. The Foreign Representative anticipates that the Chapter 15 Cases will complement the Debtors' primary proceedings in Canada and ensure the effective and efficient administration of their restructuring. Further, the Foreign Representative submits that recognition of the Canadian Proceeding will allow the Debtors to restructure in the most efficient manner without prejudicing the rights of the U.S. creditors. Any dissenting creditor will have full access and opportunity to participate in the Canadian Proceeding.

**VI.    The Canadian Proceeding Is a Foreign Proceeding**

41.    Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

42.    Although Congress only enacted chapter 15 in 2005, and courts have not yet fully developed precedent on it, courts have opined on the factors necessary to demonstrate that a proceeding constitutes a "foreign proceeding." For example, in In re Betcorp Ltd., 400 B.R. 266, 277 (Bankr. D. Nev. 2009), the court examined chapter 15's legislative history as well as the Model Law on Cross-Border Insolvency, which ultimately formed the basis for chapter 15, and disaggregated section 101(23) of the Bankruptcy Code into a seven-factor test to determine whether a proceeding constitutes a "foreign proceeding." Specifically, the court found that a "foreign proceeding" must be a proceeding:

---

Further, the Foreign Representative reserves the right to request further relief pursuant to section 1521 of the Bankruptcy Code prior to or at the hearing on the Petition.

11

ACTIVE 25923708v1 00/00/0000 0:00 AM

(1)    in which "acts and formalities [are] set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice;"

(2)    that has either a judicial or an administrative character;

(3)    collective in nature, in that it considers the rights and obligations of all creditors;

(4)    located in a foreign country;

(5)    authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;

(6)    in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and

(7)    for the purpose of reorganization or liquidation.

See Betcorp, 400 B.R. at 275-82; see also In re Overnight and Control Commission of Avanzit, S.A., 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors).

43.    As further supported by the facts discussed in the Heinrichs Declaration and the 1515 Declaration, the Debtors' proceeding in the Canadian Court, commenced to restructure the Debtors' financial obligations, constitutes a "foreign proceeding".

44.    *First*, the Debtors commenced the Canadian Proceeding under the CCAA, a law relating to adjustment of debts that specifically allows corporations to seek creditor and court approval of a "compromise or arrangement" that may compromise the claims and interests of creditors and shareholders. See CCAA § 11.

45.    *Second*, the proceeding is "judicial," having commenced before the Canadian Court, which has the power to enter "any order that is considers appropriate in the circumstances." See id.

46.    *Third*, the Canadian Proceeding is collective in nature, considering all creditors' rights. Indeed, all creditor classes in the Canadian Proceeding either are unimpaired or impaired and entitled to participate in the proceedings. In Betcorp, for instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors," and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." See Betcorp, 400 B.R. at 281. Here, all parties in interest that file a proof of claim in the Canadian Proceeding will have the opportunity to participation

12

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    in the formulation and voting process regarding a plan of arrangement. Further, arguably, the Canadian

2    Proceeding is more collective in nature than even proceedings under chapter 11 of the Bankruptcy

3    Code, as classes of creditors cannot be bound to a plan of arrangement unless the Debtors obtain the

4    statutorily required votes of each class.

5         47.   **Fourth**, the Canadian Court is located in Vancouver, Canada, a foreign country.

6         48.   **Fifth**, as described above, the CCAA is a Canadian law governing, among other things,

7    corporate restructuring, as contemplated by the Canadian Proceeding.

8         49.   **Sixth**, the Canadian Court supervises the Debtors' assets and affairs during the pendency

9    of the Canadian Proceeding, as any party-in-interest seeking to object to orders sought in the Canadian

10   Proceeding may appeal to, and obtain relief from, the Canadian Court.

11        50.   **Finally**, the Canadian Proceeding has one objective: the restructuring of the Debtors.

12   The Foreign Representative eventually will submit, pursuant to the CCAA, a plan of arrangement,

13   which will provide for a restructuring of the Debtors on a consensual basis with the Debtors' creditors.

14   The Foreign Representative therefore respectfully submits that the Debtors have commenced the

15   Canadian Proceeding for a reorganization purpose, as required by section 101(23) of the Bankruptcy

16   Code.   Cf. In re Avanzit, 385 B.R. at 533-34 (recognizing a "financial restructuring" as a

17   "reorganization" for purposes of the sections 101(23) and 1517 analysis, especially where the plan at

18   issue provides for repayment of debts).

19        51.   Bankruptcy courts have regularly recognize Canadian restructuring proceedings under

20   the CCAA and other Canadian insolvency statutes as "foreign proceedings" as that term is used in

21   section 101(23) of the Bankruptcy Code. See, e.g., In re Abitibi-Consolidated Inc., Case No. 09-11348

22   (Banta. D. Del. August 3, 2009) [Docket No. 59] (recognizing Canadian debtor's CCAA proceeding as

23   "foreign proceeding"); In re Nortel Networks Corp., Case No. 09-10164 (Bankr. D. Del. Feb. 27, 2009)

24   [Docket No. 40] (same); In re Pope & Talbot, Inc., Case No. 08-11933 (Bankr. D. Del. Sept 8, 2008)

25   [Docket No. 22] (recognizing Canadian receivership proceeding as "foreign proceeding"); In re

26   Destinator Technologies, Inc., Case No. 08-11003 (Bankr. D. Del. June 6, 2008) [Docket No. 43]

27   (recognizing Canadian debtor's CCAA proceeding as "foreign proceeding"); see also In re Mount Real

28   Corp., Case No. 06-41636 (Bankr. D. Minn. Sept. 6, 2006) [Docket No. 8] (recognizing proceeding

1   under Canadian Bankruptcy and Insolvency Act as "foreign proceeding"); In re MuscleTech Research

2   & Dev., Case Nos. 06-10092, 04-MD-1598, 06-CV-538, 06-CV-539 (Bankr. S.D.N.Y. Mar. 3, 2006)

3   [Docket No. 46] (recognizing Canadian debtor's CCAA proceeding as "foreign proceeding"); In re

4   Combat Sports, Inc., Case Nos. 13-11632, 13-11634 (Bankr. W.D. Wash. March 22, 2013) [Docket No.

5   26] (recognizing proceeding under Canadian Bankruptcy and Insolvency Act as "foreign proceeding").

6       52.     Similarly, under former section 304 of the Bankruptcy Code, the statutory predecessor to

7   chapter 15, courts regularly granted recognition to Canadian reorganization proceedings. See, e.g.,

8   Smith v. Dominion Bridge Corp., 1999 WL 111465, at *3 (E.D. Pa. 1999) (recognizing Canadian

9   proceeding under former section 304 of the Bankruptcy Code and general comity principles); In re

10  Davis, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity

11  to Canadian proceedings.").

12      53.     Accordingly, this Court should find that the Canadian Proceeding satisfies section

13  101(23) of the Bankruptcy Code and constitutes a "foreign proceeding" as required by section 1517.[12]

14  **VII.    The Foreign Representative Qualifies as a Foreign Representative**

15      54.     In addition to qualifying as a foreign proceeding as defined in the Bankruptcy Code, to

16  obtain recognition under chapter 15, the Canadian Proceeding must have a "foreign representative." See

17  11 U.S.C. § 1517.

18      55.     The Foreign Representative submits that it commenced the Chapter 15 Cases as a duly

19  appointed and authorized "foreign representative" within the meaning of section 101(24). Section

20  101(24) provides as follows:

21          The term "foreign representative" means a person or body, including a
22          person or body appointed on an interim basis, authorized in a foreign
            proceeding to administer the reorganization or the liquidation of the
23          debtor's assets or affairs or to act as a representative of such foreign
            proceeding.

24  11 U.S.C. § 101(24).

25

26  _____
    [12]  In addition, the Foreign Representative submits that recognition of the Canadian Proceeding and any orders that
27  issue from the Canadian Court during the pendency of the Canadian Proceeding would not be "manifestly contrary to the
    public policy of the United States" so as to justify this Court's exercise of its discretion under section 1506 of the
28  Bankruptcy Code to refuse to recognize the Canadian Proceeding.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 252-2900
(702) 597-5503 (fax)

ACTIVE 25923708v1 00/00/0000 0:00 AM

56.     The Canadian Court specifically authorized the Foreign Representative to commence this chapter 15 proceeding. Concurrently herewith, and attached hereto as <u>Exhibit C,</u> the Foreign Representative has filed a copy of the order entered by the Canadian Court commencing the Canadian Proceeding and appointing the Foreign Representative with authority to commence the Chapter 15 Cases. Thus, the Foreign Representative submits that it has met the requirements of section 101(24). <u>Cf.</u> <u>In re SPhinX, Ltd.</u>, 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006), <u>aff'd</u> 371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had submitted a "copy of the Cayman Court's order appointing them to administer the Debtors' winding up under the Companies Law and authorizing their commencement of these chapter 15 cases, thereby satisfying section 101(24) of the Bankruptcy Code").

## VIII.    The Canadian Proceeding is a Foreign Main Proceeding

57.     The Canadian Proceeding constitutes a "foreign main proceeding" for the Debtors as defined in section 1517(b)(1) of the Bankruptcy Code.

58.     Section 1517(b)(1) of the Bankruptcy Code provides that a "foreign main proceeding" is a "foreign proceeding" pending in the country where the debtor has its center of main interests ("<u>COMI</u>"). 11 U.S.C. § 1517(b)(1).

59.     Section 1516(c) of the Bankruptcy Code provides that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); <u>In re Bear Stearns High-Grade Structured Credit Strategies Master Fund</u>, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), <u>aff'd</u> 389 B.R. 325 (S.D.N.Y. 2008). However, the presumption that the location of the debtor's registered office is also the debtor's COMI was adopted merely for "speed" and administrative convenience, and is therefore rebuttable. <u>In re SPhinX, Ltd.</u>, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), <u>aff'd</u> 371 B.R. 10 (S.D.N.Y. 2007) (citing H.R. Rep. 109-31, pt. 1, 109th Cong., 1st Sess. at 112-13 (2005)). And, as described below, courts look to a number of factors to determine a debtor's COMI. <u>See Bear Stearns</u>, 374 B.R. at 129-30 (finding that COMI did not lie at the location of the debtor's registered office in the Cayman Islands, as administration of the debtor's business occurred in the U.S., and its principal interests, assets, and management resided in the U.S.).

60.     Though the Bankruptcy Code does not specify the factors to determine a debtor's COMI, courts have generally identified five relevant factors. These factors include: (a) the location of the

15

ACTIVE 25923708v1 00/00/0000 0:00 AM

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

debtor's headquarters; (b) the location of those persons or entities managing the debtor (which, in certain instances, could be the holding company headquarters); (c) the location of the debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority of the creditors affected by the case; and (e) the jurisdiction whose law would apply to most disputes. See, e.g., Bear Stearns, 389 B.R. at 336 (citing SPhinX, 351 B.R. at 116-17; In re Tradex Swiss AG, 384 B.R. 34, 43 (Bankr. D. Mass. 2008)); Betcorp, 400 B.R. at 287-88 (discussing Bear Stearns, Tradex and certain European insolvency law cases for COMI analysis). "The flexibility inherent in chapter 15 strongly suggests, however, that [a] court should not apply such factors mechanically," but with an eye toward "chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." SPhinX, 351 B.R. at 117.

61.     An analysis of these factors demonstrates that Canada constitutes the Debtors' COMI. As set forth in the Heinrichs Declaration:

    a. all of the Debtors (except for Queenstake) have funds in bank accounts at the Toronto Dominion Bank, Whitehorse Branch;

    b. the management of the Debtors is located in the VGC head office in Vancouver, British Columbia;

    c. Veris USA management staff report directly to, and takes direction from, VGC on issues affecting the operations and business activities of Veris USA;

    d. the corporate governance for the Debtors is directed from Vancouver, British Columbia;

    e. strategic and key operational decisions and key policy decisions for the Debtors are made by the senior management located in Vancouver, British Columbia;

    f. the Debtors' tax, treasury, and cash management functions are managed from Vancouver, British Columbia;

    g. except for payroll functions for Veris USA, the Debtors' human resources functions are managed from Vancouver, British Columbia and all senior human resources staff in the United States report into Vancouver, British Columbia;

    h. the Veris Gold Group's information technology systems are directed from Vancouver, British Columbia;

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

16

i.    all public company reporting and investor relations are directed from Vancouver, British Columbia;

j.    the finance function for the Debtors is conducted from Vancouver, British Columbia;

k.    the principle debt obligations of the Debtors with Deutsche Bank are governed by the laws of the Province of Ontario and the Federal laws of Canada; and

l.    that Ketza maintains a gold and silver exploration company, and owns land claims, in the Yukon Territory of Canada.

62.    In addition to the above factors, the following factors weigh in favor of finding Canada to constitute the Debtors' COMI. First, substantially all of the books and records of the Debtors are maintained by the Debtors in Vancouver. Second, the working capital and funding needs of the Debtors are satisfied by sources of funds directed from Canada and approved by Canadian-based managers.

63.    Moreover, both the United States and Canadian-based Debtors' operations are closely integrated. Cash management and other banking arrangements for the group of entities are integrated. Further, the key contractual relationships of the Debtor entities are closely tied to Canada. Most of the key contracts, including the Purchase Agreements, all governed by Canadian law. Due to the integrated nature of these arrangements, the banking and financing of the Debtors' United States and Canadian subsidiaries cannot easily be separated.

64.    Accordingly, the Foreign Representative respectfully submits that this Court should find that COMI lies in Canada for each of the Debtors, and this Court should recognize the Canadian Proceeding as a "foreign main proceeding" under section 1517(b) of the Bankruptcy Code with respect to the Debtors.

**IX.    This Court Should Recognize The Orders Entered in the Canadian Proceeding**

65.    Enforcement and recognition of the various orders that will be entered in the Canadian Proceeding aligns with the purposes of chapter 15 and the Canadian Proceeding, and this Court should give such orders full force and effect. As set forth in the preamble to the Model Law on Cross-Border Insolvency, the Model Law seeks to promote:

> (a) cooperation between the courts and other competent authorities of this State and foreign States involved in cases of cross-border insolvency; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the

17

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 597-5503 (fax)

ACTIVE 25923708v1 00/00/0000 0:00 AM

interests of all creditors and other interested persons, including the debtor; (d) protection and maximization of the value of the debtor's assets; and (e) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

See Model Law on Cross-Border Insolvency, available at www.uncitral.org.

66.    Section 1521(a) of the Bankruptcy Code permits this Court to, "where necessary to effectuate the purpose of [chapter 15] . . . at the request of the foreign representative, grant any appropriate relief." 11 U.S.C. § 1521(a). Section 1521 also sets forth various forms of relief that may be granted upon recognition of a foreign proceeding, including "entrust[ing] the distribution of all or part of the debtor's assets in the U.S. to the foreign representative." 11 U.S.C. § 1521(b). Further, sections 1525 and 1527 of the Bankruptcy Code, when read in conjunction, direct this Court to cooperate "to the maximum extent possible" with the Canadian Court regarding "the coordination of the administration and supervision" of the Debtors' assets and affairs. 11 U.S.C. §§ 1525 and 1527(3).

67.    Courts have routinely enforced foreign orders in chapter 15 cases. See, e.g., In re Ephedra Products Liab. Litig., 349 B.R. 333, 337 (S.D.N.Y. 2006) (granting full force and effect to order in Canadian proceeding approving claims resolution procedure that denied product liability claimants the right to a jury trial); In re Sino-Forest Corp., 501 B.R. 655, 666 (Bankr. S.D.N.Y. 2013) (granting full force and effect to order in Canadian proceeding implementing plan of reorganization that included non-debtor releases that might be not have been approved by U.S. bankruptcy court as part of a chapter 11 plan); In re Metcalfe & Mansfield Alternative Invs., 421 B.R. 685, 700 (Bankr. S.D.N.Y. 2010) (same) ("Principles of comity in chapter 15 cases support enforcement of the Canadian Orders in the United States whether or not the same relief could be ordered in a plenary case under chapter 11."); In re Grant Forest Products, Inc., 440 B.R. 616, 622 (Bankr. D. Del. 2010) (granting full force and effect to order in Canadian proceeding authorizing administrator to sign tax returns for Canadian debtor's U.S. subsidiaries without incurring tax liability to the IRS); In re Chemokine Therapeutics Corp., Case No. 09-11189 (PJW) (Bankr. D. Del. April 28, 2009) [Docket No. 15] (recognizing and giving full force and effect to two Canadian orders approving the sale of certain assets); In re Abitibi-Consolidated, Inc., Case No. 09-11348 (KJC) (Bankr. D. Del. April 21, 2009) [Docket No. 18] (giving full force and effect to Canadian court order approving debtors' securitization plan); In re Destinator

18

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

1    Technologies, Inc., Case No. 0811003 (CSS) (Bankr. D. Del. July 8, 2008) [Docket No. 63] (granting

2    enforcement of Canadian order approving sale of two of debtors' subsidiaries); In re Hollinger, Inc.,

3    Case No. 07-11029 (PJW) (Bankr. D. Del. May 30, 2008) [Docket No. 89] (granting full force and

4    effect to Canadian order and authorizing Foreign Representative to take any steps necessary to

5    implement terms of order).

6           68.    The Debtors' restructuring in the Canadian Court likely will rely on a highly

7    choreographed and detailed set of steps and transactions, not least of which being the likely release and

8    discharge of liens, claims, and other obligations of the Debtors. Without deference to the Canadian

9    Proceeding, and automatic enforcement of Canadian Court orders in the United States, the Debtors

10   cannot obtain certainty and closure in their restructuring, and hence cannot restructure. In short, the

11   Canadian restructuring cannot happen without this Court's assistance, and the Foreign Representative

12   respectfully submits that under the circumstances the Debtors have demonstrated that this Court should

13   grant the relief requested.

14   **X.    Compliance with Bankruptcy Rule 2002(q)(1)**

15          69.    Rule 2002(q)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

16   prescribes 21 days' notice of a hearing to consider granting the relief requested in a chapter 15 petition.

17   Fed. R. Bankr. P. 2002(q)(1). Bankruptcy Rule 9007 permits this Court to shorten the time, form, and

18   manner in which notice shall be given. Fed. R. Bankr. P. 9007.

19          70.    The Foreign Representative requests that the recognition hearing be scheduled on a date

20   that is the twenty-fourth (24th) day after the Petition Date, or as soon thereafter as this Court may be

21   available. This will provide the appropriate parties-in-interest with the required 21 days' notice (plus

22   any additional days for mailing). Notice of the hearing on the Petition will be provided to those parties

23   required to receive notice pursuant to Bankruptcy Rule 2002(q) or their counsel and to other interested

24   parties in accordance with the procedures established by this Court. The Foreign Representative

25   proposes to notify parties by electronic mail and by U.S. first-class mail.

26          71.    The above-described notice meets the requirements of Bankruptcy Rule 2002(q) because

27   it is provided to the required parties within the proscribed time period, and it is also in keeping with this

28

19

1  Court's "discretion to set the particularities of notice procedures" pursuant to Bankruptcy Rule 9007.

2  See In re Pierce, 435 F.3d 891, 892 (8th Cir. 2006).

3  **Conclusion**

4  72.    The Foreign Representative respectfully submits that the Petition satisfies the

5  requirements for recognition of the Canadian Proceeding as a "foreign main proceeding" and the

6  Foreign Representative as the Debtors' "foreign representative."

7  **Notice**

8  73.    The Foreign Representative will provide notice of this Petition, pursuant to Bankruptcy

9  Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the District of Nevada;

10  (b) the Debtors, (c) any known creditor of the Debtors for whom the Foreign Representative has an

11  address, (d) all entities against whom provisional relief is sought, (e) all parties to litigation pending in

12  the United States of America, (f) Deutsche Bank AG, London Branch; (g) any party-in-interest that

13  becomes known to the Foreign Representative by U.S. Mail within two (2) business days following the

14  time any such party is identified by the Foreign Representative; and (h) any additional party-in-interest

15  hereinafter specified by the Court.   In light of the nature of the relief requested, the Foreign

16  Representative respectfully submits that no further notice is necessary.

17  **No Prior Request**

18  74.    No prior request for the relief sought in this Petition has been made to this or any other

19  court.

20  WHEREFORE, the Foreign Representative respectfully requests entry of an order, substantially

21  in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further

22  relief as is just and proper.

23  Dated this 9th day of June, 2014.

24  FOX ROTHSCHILD LLP

25  By    s/

26  CHARLES A. AXELROD
   *[Pro Hac Vice Pending]*

27  BRETT A. AXELROD (NV Bar No. 5859)

28  MICAELA RUSTIA MOORE (NV Bar No. 9676)

20

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 252-6509
(702) 597-5503 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
*Counsel for Ernst & Young, Inc. as Foreign
Representative to Veris Gold Corp. et al.*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 25923708v1 00/00/0000 0:00 AM

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Kevin Brennan hereby declares under penalty of perjury as follows:

I am a Senior Vice President of Ernst & Young, Inc., the monitor appointed by the Supreme Court of British Columbia, Canada, Vancouver Registry, and have full authority to verify the foregoing Verified Petition for Recognition and Chapter 15 Relief ("Petition for Recognition"). I have read the foregoing Petition for Recognition, and am informed and believe that the allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed this 9th day of June in Vancouver, Canada

KEVIN BRENNAN

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

22

ACTIVE 25923708v1 00/00/0000 0:00 AM

1

2

3

4

5

**EXHIBIT A**

**Proposed Recognition Order**

6    CHARLES AXELROD, ESQ.
     *[Pro Hac Vice Pending]*

7    BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859

8    MICAELA RUSTIA MOORE, ESQ.
     Nevada Bar No. 9676

9    **FOX ROTHSCHILD LLP**

10   3800 Howard Hughes Parkway, Suite 500
     Las Vegas, Nevada 89169

11   Telephone: (702) 262-6899

12   Facsimile: (702) 597-5503
     Email: baxelrod@foxrothschild.com

13          caxelrod@foxrothschild.com
            mmoore@foxrothschild.com

14   *Counsel for Ernst & Young, Inc. as Foreign*
     *Representative of Veris Gold Corp. et al.*

15

16              **UNITED STATES BANKRUPTCY COURT**

17                **FOR THE DISTRICT OF NEVADA**

18   | In re | Case No. 14- |
     |---|---|

19   | | (Joint Administration Requested) |

20   | VERIS GOLD CORP.,[13] | Chapter 15 |

21   | | |

22   | Debtors in a Foreign Proceeding. | **ORDER PURSUANT TO 11 U.S.C. §§ 1504,** |

23   | | **1515, 1517, 1520, AND 1521** **RECOGNIZING FOREIGN** |

24   | | **REPRESENTATIVE AND FOREIGN** **MAIN PROCEEDING** |

25   _____

26   [13]   The Debtors, along with the last four digits of each U.S. Debtors' federal tax identification number, if any, are: Veris Gold Corp. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number), Queenstake Resources

27   Ltd. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number), Ketza River Holdings Ltd. (a non-U.S. Debtor that does not maintain a U.S. federal tax identification number), and Veris Gold U.S.A., Inc. (6862). The

28   location of the Debtors' corporate headquarters and the service address for all of the Debtors is: 900-688 West Hastings Street, Vancouver BC V6B 1P1, Canada, Attn: Shaun Heinrichs.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

23

ACTIVE 25923708v1 00/00/0000 0:00 AM

Upon the *Verified Petition for Recognition and Chapter 15 Relief* (the "Petition")[14] seeking recognition of: (a) the Foreign Representative as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code of the above-captioned debtors (collectively, the "Debtors"); and (b) the Debtors' CCAA proceeding (the "Canadian Proceeding") pending before the Supreme Court of British Columbia, Canada, Vancouver Registry (the "Canadian Court"), as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); and upon the hearing on the Petition and this Court's review and consideration of the Petition, the Heinrichs Declaration, and the 1515 Declaration;

IT IS HEREBY FOUND AND DETERMINED THAT:[15]

1.      This Court has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.

2.      The consideration of the Petition and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410(1) and (3).

4.      Good, sufficient, appropriate and timely notice of the filing of the Petition and the hearing on the Petition has been given by the Foreign Representative, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the District of Nevada; (b) the Debtors, (c) any known creditor of the Debtors for whom the Foreign Representative has an address, (d) all entities against whom provisional relief is sought, (e) all parties to litigation pending in the United States of America, (f) Deutsche Bank AG, London Branch; (g) any party-in-interest that becomes known to the Foreign Representative by U.S. Mail within two (2) business days following the time any such party is identified by the Foreign Representative; and (h) any additional party-in-interest hereinafter specified by the Court.

---

[14]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Petition.

[15]  The findings and conclusions set forth herein and in the record of the hearing on the Petition constitute this Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

24

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 25923708v1 00/00/0000 0:00 AM

5.     No objections or other responses were filed that have not been overruled, withdrawn or otherwise resolved.

6.     The Chapter 15 Cases were properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

7.     The Foreign Representative is a "person" pursuant to section 101(41) of the Bankruptcy Code and is the "foreign representative" of the Debtors as such term is defined in section 101(24) of the Bankruptcy Code, and the Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

8.     The Canadian Proceeding is pending in Canada, where the Debtors' "center of main interests," as referred to in section 1517(b)(1) of the Bankruptcy Code, of the Debtors is located, and accordingly, the Canadian Proceeding is a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

9.     The Foreign Representative is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

10.     The Foreign Representative is entitled to all the relief provided pursuant to sections 1520 and 1521(a)(4) and (5) of the Bankruptcy Code without limitation, because those protections are necessary to effectuate the purposes of chapter 15 of the Bankruptcy Code and to protect the assets of the Debtors and the interests of the Debtors' creditors.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:

11.     The Petition is granted.

12.     The Canadian Proceeding is recognized as a foreign main proceeding pursuant to section 1517(a) and 1517(b)(1) of the Bankruptcy Code, and all the effects of recognition as set forth in section 1520 of the Bankruptcy Code shall apply.

13.     Upon entry of this Order: pursuant to section 1520 of the Bankruptcy Code, the Canadian Proceeding shall be given its full force and effect; and, among other things:

25

ACTIVE 25923708v1 00/00/0000 0:00 AM

(a)     the protections of sections 361 and 362 of the Bankruptcy Code apply with respect to the Debtors and the property of the Debtors in the territorial jurisdiction of the United States;

(b)     all persons and entities are enjoined from seizing, attaching and/or enforcing or executing liens or judgments against the Debtors' property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative; and

(c)     all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof that are located in the United States, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof that are located in the United States.

14.    The Foreign Representative shall be entitled to the full protections and rights enumerated under section 1521(a)(4) and (5) of the Bankruptcy Code, and accordingly, the Foreign Representative:

(a)     is entrusted with the administration or realization of all or part of the Debtors' assets located in the United States; and

(b)     has the right and power to examine witnesses, take evidence or deliver information concerning the Debtors' assets, affairs, rights, obligations, or liabilities.

15.    The Foreign Representative is hereby established as the representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States, including, without limitation, making payments on account of the Debtors' prepetition and postpetition obligations.

16.    The banks and financial institutions with which the Debtors maintain bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Debtors' bank accounts without interruption and in the ordinary course and to receive, process, honor and pay any and all such checks, drafts, wires and automatic clearing house transfers issued, whether before or after the Petition Date and drawn on the Debtors' bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Debtors, as the case may be.

26

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

17.    All orders entered, or actions taken, by the Canadian Court in the Canadian Proceeding (including, without limitation, any order or action converting the Canadian Proceeding to another proceeding under Canadian insolvency or receivership law) shall be given full faith, effect and credit in the United States pursuant to section 1521(a) of the Bankruptcy Code, and shall be upon their entry in the Canadian Proceeding immediately valid and fully enforceable and effective as to the Debtors and their property and assets in the United States.

18.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

19.    The Foreign Representative, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

20.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.    This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through the Chapter 15 Cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By_____*s/Brett Axelrod*_____
    CHARLES AXELROD, ESQ.
    *[PRO HAC VICE PENDING]*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

27

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The Court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion, pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

28

ACTIVE 25923708v1 00/00/0000 0:00 AM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

**Corporate Structure Chart**

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

29

ACTIVE 25923708v1 00/00/0000 0:00 AM

This is Exhibit "B" referred to in the affidavit of
S. Heinrichs  made before me on June ⅄ , 2014

A Commissioner for taking Affidavits

for British Columbia

