Mark C. Ellenberg, Esq.
*Admitted Pro Hac Vice*
**CADWALADER, WICKERSHAM & TAFT LLP**          **E-Filed 7/16/14**
700 Sixth Street, NW
Washington, D.C. 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Email: mark.ellenberg@cwt.com

Howard R. Hawkins, Jr., Esq.
*Admitted Pro Hac Vice*
**CADWALADER, WICKERSHAM & TAFT LLP**
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: howard.hawkins@cwt.com

Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 85909
Telephone: (775) 324-2800
Facsimile: (775) 324-1818
Email: notices@bankruptcyreno.com

*Attorneys for Deutsche Bank AG, London Branch*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

------------------------------------------------------ x
In re:                                                                :
      VERIS GOLD CORP.,                          :
                            :
      Affects Veris Gold Corp.                 :
      Affects Veris Gold USA, Inc.            :
      Affects Queenstake Resources, Ltd. :
      Affects Ketza River Holdings Ltd.   :
      Affects all Debtors                         :
                            :
      Debtors in a Foreign Proceeding.   :
                            :
                            :
                            :
------------------------------------------------------ x

Case Nos. 14-51015-btb, 14-51020-btb, 14-51021-btb, 14-51022-btb

Jointly Administered Under Case No. 14-51015-btb

Chapter 15

**MOTION FOR ENTRY OF AN ORDER PROTECTING CASH COLLATERAL  AND GRANTING ADEQUATE PROTECTION TO DEUTSCHE BANK AG**

Hearing Date: OST PENDING
Hearing Time: OST PENDING

USActive 30980805.3

Deutsche Bank AG, London Branch ("Deutsche Bank") respectfully submits this motion (the "Motion"), pursuant to sections 363(c)(2) and (e), 1520, and 1522 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), conditioning the use by the above-captioned debtors (collectively, the "Debtors") of cash and other property in which Deutsche Bank has an interest upon the grant of adequate and sufficient protection.

## PRELIMINARY STATEMENT

1.      Pursuant to prepetition agreements between Deutsche Bank and the Debtors, Deutsche Bank has a security interest in virtually all of the Debtors' assets. Accordingly, all cash in the Debtors' possession is either direct collateral or the proceeds of collateral.  The Debtors are attempting to fund their continued operations exclusively through the use of this cash collateral.  Section 363(c)(2) of the Bankruptcy Code, made applicable here by section 1520(e), prohibits the use of Deutsche Bank's cash collateral, even in the ordinary course of business.  Deutsche Bank would consent to the use of cash collateral, if the use were conditioned as provided in the attached order.  Negotiations over the terms of this order between Deutsche Bank and the Debtors did not produce an agreement, thus making this motion necessary.

2.      Apart from protection of its cash collateral, Deutsche Bank is entitled to adequate protection of its "hard" collateral.  The gold in Debtors' mines is a finite resource. Every day of production depletes that resource, thus depleting the value of Deutsche Bank's collateral.  Adequate protection of a secured creditor's interest in debtor property is a fundamental aspect of U.S. bankruptcy law.  Without such protection, a debtor would have unfettered power to deplete a creditor's collateral without just compensation, thereby depriving the creditor of its contractual and Constitutional rights.

## BACKGROUND

3.       On August 12, 2011, Deutsche Bank, as buyer, and Veris Gold U.S.A.,

Inc. ("VUSA"), as seller, entered into a first lien forward gold purchase agreement (the "2011

Forward Agreement").    Pursuant to the 2011 Forward Agreement, VUSA agreed to sell to

Deutsche Bank, and Deutsche Bank agreed to purchase from VUSA, 173,880 ounces of gold to

be delivered monthly during the period of September 2011 through August 2015 in certain

scheduled quantities.    Declaration of Shaun Heinrichs in Support of Verified Petition for

Recognition and Chapter 15 Relief (the "Heinrichs Decl.") at ¶ 17; Declaration of Mark C.

Ellenberg in Opposition to Motion for Entry of An Order Extending the Provisional Relief Under

Section 1521(a)(6) of the Bankruptcy Code (the "Ellenberg Declaration"), Ex. B, at § 4 (the

Forward Gold Purchase Agreement, dated August 12, 2011).    In consideration for the gold,

Deutsche Bank made a prepayment of $120 million to VUSA.    Heinrichs Decl. at ¶ 16; Ellenberg

Declaration, Ex. B, at § 7(1).    In addition, the 2011 Forward Agreement includes a gold price

"collar," pursuant to which VUSA is long a price floor and short a price cap, with final strike

prices to be determined at closing.    The price collar was included to guarantee a minimum and

maximum price to VUSA for the monthly gold deliveries made to Deutsche Bank over the life of

the transaction.    Heinrichs Decl. at ¶ 15; Ellenberg Declaration, Ex. B, at § 7(3).    Any monthly

deliveries of gold from VUSA to Deutsche Bank that would take place while the gold spot price

was above the floor price but below the cap price resulted in an additional payment from

Deutsche Bank to VUSA.    Ellenberg Declaration, Ex. B, at § 7(3).    Payments from Deutsche

Bank on the collar were due two business days following VUSA's monthly gold delivery.    Id.

4.       Pursuant to a Deed of Trust, Security Agreement, Assignment of Leases

and Rents and Fixture Filing to Secure Forward Gold Purchase Agreement, dated August 12,

2011 (the "Deed of Trust"), from VUSA, as debtor, to Stewart Title of Nevada Holdings, Inc., as trustee, with Computershare Trust Company of Canada, as Collateral Agent (the "Collateral Agent"), on behalf of and for the benefit of Deutsche Bank, VUSA granted the Collateral Agent a first lien on and security interest in, among other things, the fee lands, patented mining claims, unpatented mining claims and leases of mining claims that comprise the Jerritt Canyon Mine, a gold mine located in Elko County, Nevada (the "Real Property Collateral"). Heinrichs Decl. at ¶ 18; Ellenberg Declaration, Ex. A, at 3. Pursuant to a Security Agreement, dated August 12, 2011 (the "Security Agreement" and with the Deed of Trust, the "Collateral Documents"), made by VUSA to and in favor of the Collateral Agent, on behalf of and for the benefit of Deutsche Bank, VUSA granted the Collateral Agent all of its right, title, and interest to certain personal property (the "Personal Property Collateral"). Heinrichs Decl. at ¶ 18; Ellenberg Declaration, Ex. G, at 5. All collateral granted or pledged by the Debtors to Deutsche Bank or the Collateral Agent pursuant to the Collateral Documents and the other Forward Agreement Documents (as defined in the Proposed Order), including, without limitation, cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) (the "Cash Collateral"), and all proceeds, products, offspring, rents, and profits of such collateral, shall collectively be referred to herein as the "Forward Agreement Collateral."

     5.     On February 7, 2012, Deutsche Bank, as buyer, and VUSA, as seller, entered into a Second Lien Forward Gold Purchase Agreement (the "2012 Forward Agreement," and together with the 2011 Forward Agreement, the "Forward Agreements"). Heinrichs Decl. at ¶ 19. Pursuant to the 2012 Forward Agreement, VUSA agreed to sell to Deutsche Bank, and Deutsche Bank agreed to purchase from VUSA, 27,950 ounces of gold to be delivered monthly during the period of March 2012 through September 2015 in certain scheduled quantities, for $20,000,000. Heinrichs Decl. at ¶ 19. The 2012 Forward Agreement includes a similar gold

price "collar" as provided in the 2011 Forward Agreement.  Heinrichs Decl. at ¶ 19.  The Debtors' obligations under the 2012 Forward Agreement are secured by second lien security interests in the Forward Agreement Collateral.  Heinrichs Decl. at ¶ 19.

6.     The following Debtors guaranteed VUSA's obligations under the Forward Agreements:  (a) Veris Gold Corp., a British Columbia corporation; (b) Queenstake Resources Ltd., a British Columbia corporation; and (c) Ketza River Holdings Ltd., a Yukon corporation. Heinrichs Decl. at ¶ 18.

7.     Due to managerial and operational difficulties, VUSA has not made its scheduled monthly gold deliveries to Deutsche Bank, or paid the cash equivalent thereof, since December 2013, when VUSA temporarily suspended operations at the Jerritt Canyon Mine following a fire at the mine's mill complex. See Ellenberg Declaration, Ex. D, at 1-2 (Notices of Early Termination Date Under The Forward Agreements); Ellenberg Declaration, Ex. E, at 1 (Press Release, Veris Gold Corp., Veris Gold Corp. Advises Financial Restructuring (Jan. 29, 2014)).  Subsequently, in March 2014, VUSA's management allowed the Jerritt Mine's air permit to lapse, resulting a mandatory suspension of all processing operations from March 11, 2014 to April 1, 2014.  Ellenberg Declaration, Ex. C, at 1 (Notice of Proposed Action by the State of Nevada Division of Environmental Protection Bureau of Air Pollution Control); Ellenberg Declaration, Ex. F, at 1 (Press Release, Veris Gold Corp., "Veris Gold Corp. Announces Start Up at Jerritt Canyon" (Apr. 1, 2014)).  As a result, VUSA defaulted under the Forward Agreements, and Deutsche Bank delivered to VUSA a Notice of Early Termination with respect to the Forward Agreements on June 3, 2014.  See Ellenberg Declaration, Ex. D, at 1-2.  The Notices of Early Termination stated that if VUSA did not make payment to Deutsche Bank of the approximately $89 million due under the terms of the Forward Agreements by the

close of business on June 9, 2014, Deutsche Bank would take steps to enforce its contractual rights against VUSA. Ellenberg Declaration, Ex. D, at 1-2.

8. On June 9, 2014 (the "Petition Date"), the Debtors commenced a foreign proceeding under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the "CCAA") currently pending before the Supreme Court of British Columbia, Canada, Judicial District of Vancouver (the "Canadian Proceeding" pending in the "Canadian Court"). After a hearing held the same day, the Canadian Court issued its *Initial Order* (the "Canadian Order"), which, among other things, authorized the Debtors to file a plan of compromise or arrangement with the Canadian Court, appointed Ernst & Young Inc. as the Monitor to the Canadian Proceeding (the "Monitor"), and temporarily stayed Deutsche Bank from exercising any rights of realization it has against the Debtors' property through July 8, 2014, without prejudice to Deutsche Bank's right to apply to lift such stay or to seek a declaration that Deutsche Bank is not prohibited, stayed, or restrained to the extent any of its agreements with the Debtors are declared to be "eligible financial contracts" as defined in the CCAA. Canadian Order ¶¶ 16, 18.

9. On the Petition Date, the Foreign Representative also filed a *Petition for Recognition and Chapter 15 Relief* [Dkt. No. 1] in this Court seeking recognition of the Canadian Proceeding, and an *Emergency Motion for Entry of an Order Granting Provisional Relief Under Section 1519(a) of the Bankruptcy Code* [Dkt. No. 3] (the "Provisional Relief Motion") seeking allegedly urgent provisional relief to enjoin Deutsche Bank in the United States from exercising its rights and remedies under the Forward Agreements (the "Provisional Relief"). Provisional Relief Mot. at 3. That same day, following less than 24 hours' notice to Deutsche Bank's counsel, this Court granted the Provisional Relief, while expressly stating that it was not ruling on the issue of whether the Forward Agreements are "forward contracts" for

purposes of the Bankruptcy Code.  *Transcript of Emergency Motion for Entry of an Order Granting Provisional Relief Under Section 1519 of the Bankruptcy Code* at 5 [Dkt. No. 13].

10.      The Provisional Relief granted by the Court remains in effect, and the Foreign Representative filed a motion on July 9, 2014 seeking to further extend the Provisional Relief (the "Extension Motion").  Extension Mot. at 1-2.  As a result, Deutsche Bank is currently prohibited from enforcing its contractual rights under the Forward Agreements and Collateral Documents in contravention of the safe harbors established under sections 556 and 362(b)(6) of the Bankruptcy Code, and Deutsche Bank has been denied any protection of its interests in the Forward Agreement Collateral afforded to secured creditors under sections 363(c)(2) and (e), 1520, and 1522 of the Bankruptcy Code, thereby exposing Deutsche Bank to significant uncompensated depletion of the collateral in which it has duly perfected security interests and liens.

## ARGUMENT

### I.      DEUTSCHE BANK IS ENTITLED TO PROTECTION OF ITS INTEREST IN THE FORWARD AGREEMENT COLLATERAL

11.      As a secured party, Deutsche Bank is entitled to protection of its interests in the Forward Agreement Collateral pursuant to sections 363(c)(2) and (e), 1520, and 1522 of the Bankruptcy Code and therefore, the Court should condition the Debtors' use of such collateral upon the provision of adequate protection in the forms described below.

12.      Pursuant to section 1520 of the Bankruptcy Code, upon recognition of a foreign proceeding as a "foreign main proceeding", the Foreign Representative is authorized to "operate the debtor's business and may exercise the rights and powers of a trustee **under and to the extent provided by sections 363** and 552."  11 U.S.C. § 1520(a)(3) (emphasis added); In re Int'l Banking Corp. B.S.C., 439 B.R. 614, 627 (Bankr. S.D.N.Y. 2010) ("In addition, Chapter 15

grants secured creditors . . . the same protections that they would enjoy in a plenary bankruptcy case.  Recognition triggers the applicability of §§ 361 and 363 of the Bankruptcy Code.").  Thus, the Foreign Representative's rights and powers under section 363 of the Bankruptcy Code are limited to the extent provided under that statute, including, as discussed below, the prohibition on the use of cash collateral and the obligation to provide adequate protection to secured creditors.  11 U.S.C. § 363(c)(2), (e).

13.    Additionally, section 1522 of the Bankruptcy Code further protects creditors by authorizing the court to grant or modify relief in chapter 15 cases as necessary to "sufficiently protect" the interests of creditors.  11 U.S.C. § 1522.  Congress gave courts "broad latitude to mold relief to meet specific circumstances" when analyzing whether parties are sufficiently protected.  H.R. Rep. No. 109-31, at 116; U.S. Code Cong. & Admin. News 2005, pp. 88, 178.  Protective measures to ensure a creditor is sufficiently protected should be tailored "so as to balance the relief granted to the foreign representative and the interests of those affected by such relief."  In re Tri-Continental Exchange, Ltd., 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) (citing Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997).

**A.    The Debtors Are Prohibited From Using Cash Collateral, Even in the Ordinary Course of Business, Without Adequate Protection of Deutsche Bank's Security Interests.**

14.    Section 363 of the Bankruptcy Code does not permit the use of cash collateral, even in the ordinary course of a debtor's business, without adequate protection.  11 U.S.C. § 363(c)(2)(B) and (e).  Cash collateral includes "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents" as well as the "proceeds, products, offspring, rents, or profits" of any property in which an entity other than the estate has an interest.  See 11 U.S.C. § 363(a).

15.     Cash is treated differently from other collateral because of its uniquely perishable nature.  As stated by one court, "Once cash collateral has been dissipated and spent, court-fashioned sanctions such as retroactive adequate protection, appointment of a Chapter 11 trustee or prohibitions against the further use of cash collateral can be hollow victories for a secured creditor and do not rise to the level of a 'remedy'."  In re Williams, 61 B.R. 567 (Bankr. N.D. Tex. 1986).  Similarly, "Congress, in enacting § 363 of the [Bankruptcy] Code, gave a special treatment to 'cash collateral' . . . ,[which] requires *special protective safeguards* in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor."  Sun Bank/Suncoast v. Earth Lite, Inc. (In re Earth Lite, Inc.), 9 B.R. 440, 443 (Bankr. M.D. Fla. 1981) (emphasis added).  Thus, courts routinely hold that the use of cash collateral cannot be predicated on the existence of an equity cushion.  Rather, dollar-for-dollar replacement liens on new collateral are required.  See In re Gyro-Trac (USA), Inc., No. CA-10-01908-DD, 2010 WL 5173160, at *3 (Bankr. D.S.C. Apr. 7, 2010) ("A debtor should not be authorized to use cash collateral without making payments to the secured party merely because it has, at the commencement of the case, a meaningful equity cushion in the collateral."); In re Wonder Corp. of Am., 109 B.R. 18, (Bankr. D. Conn. 1989) ("the mere existence of an equity cushion does not necessarily provide a creditor with adequate protection."); In re Polzin, 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) ("Due to the fact that the collateral is consumed or used up in a § 363 context and the creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one.") (citing In re Berens, 41 B.R. 524 (Bankr. D. Minn. 1984)); In re Epstein, 26 B.R. 354, 357 (Bankr. E.D. Tenn. 1982) ("Although an equity cushion in and of itself may suffice as adequate protection entitling a debtor to the continued protection of an automatic stay, an equity cushion does not automatically entitle a debtor in possession to

use cash collateral."); In re Earth Lite, Inc., 9 B.R. at 444 (holding that an equity cushion cannot provide sufficient adequate protection to justify a debtor's use of cash collateral).

16.    The Debtors do not have DIP financing.    They are financing their operations exclusively through the consumption of Deutsche Bank's cash collateral.    The Debtors cannot do this, unless Deutsche Bank receives adequate protection.

**B.    The Debtor Must Also Provide Adequate Protection for the Use of Deutsche Bank's Non-Cash Collateral.**

17.    Section 363(e) of the Bankruptcy Code requires the Court to prohibit or condition the use, sale, or lease of any property by a debtor as is necessary to provide adequate protection of parties' interests therein.    See 11 U.S.C. § 363(e); In re Dewey Ranch Hockey, LLC, 414 B.R. 577, 591 (Bankr. D. Az. 2009) (stating that Section 363(e) requires the court "to provide adequate protection."); see also Contrarian Funds LLC v. Aretex LLC (In re Westpoint Stevens, Inc.), 600 F.3d 231, 260 (2d Cir. 2010) ("In bankruptcy proceedings, a secured creditor ordinarily has a statutory right to adequate protection payments to protect its interests against the diminution in value of its security.").

18.    The purpose of adequate protection is to guard against a decrease in the value of a secured creditor's interest in a debtor's assets.    Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC), 314 B.R. 436, 441-42 (9th Cir. BAP 2004) (by granting adequate protection to the creditor, "the creditor receives assurances that the value it could have received through foreclosure will not decline."); La Jolla Mtg. Fund v. Rancho El Cajon Assocs., 18 B.R. 283, 286-87 (Bankr. S.D. Cal. 1982) (stating that the purpose of adequate protection "is to insure that the creditor with a secured claim receives in value essentially what he bargained for."); see also New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 90 (2d Cir. 2003) (adequate protection provisions

of the Bankruptcy Code specifically protect secured creditors).  The concept of adequate protected is derived from the Fifth Amendment's protection of property interests and is a fundamental right of secured creditors.  See LNC Invs., Inc. v. First Fid. Bank, N.A., 247 B.R. 38, 44 (S.D.N.Y. 2000) ("The concept of adequate protection is derived from the fifth amendment protection of property interests"); In re Cason, 190 B.R. 917, 927-28 (Bankr. N.D. Ala. 1995) (referring to adequate protection as a fundamental bankruptcy principle); In re Waste Conversion Techs., Inc., 205 B.R. 1004, 1007 (D. Conn. 1997) (describing adequate protection as a fundamental right of secured creditors).

19.    The burden of proof on the issue of adequate protection rests with the debtor.  See 11 U.S.C. § 363(e); In re Center Wholesale, Inc., 788 F.2d 541, 544 (9th Cir. 1986) ("Section 363(e) also provides that the trustee (debtor in possession) has the burden of proof on the issue of adequate protection"); see also In re Armenakis, 406 (B.R. 589, 620-21 (Bankr. S.D.N.Y. 2009) (holding that the party seeking adequate protection must "demonstrate that it has an interest" in the property and that there is a "threat of decline in value," and then the burden shifts to the Debtor to prove that the secured party is adequately protected).  If the Debtors cannot establish that Deutsche Bank's interest in the Forward Agreement Collateral is adequately protected, the Debtors cannot use the Forward Agreement Collateral, regardless of the costly interruptions it might cause to the Debtors business.  See 3 Collier on Bankruptcy ¶ 363.05[2], at 363-42 (16th ed. 2011) ("If adequate protection cannot be offered, such use, sale or lease of the collateral must be prohibited.").

20.    Here, the need to protect Deutsche Bank's interest in the Forward Agreement Collateral is particularly compelling.  The Debtors continue to use the Forward Agreement Collateral without any protection against the attendant diminution in value.  The risk of value destruction is acute because the Debtors are mining, processing, and selling gold – a

finite resource – and then using the proceeds of the gold sales to fund their operations. Every day the Debtors operate, the value of Deutsche Bank's Forward Agreement collateral is further depleted by a measurable amount. See In re Outlaw Ridge, Inc., No. 14-04400, 2014 WL 1871237 (Bankr. M.D. Fla. Apr. 25, 2014) (citing In re W.B.S.S., L.P., 366 B.R. 629, 634 (Bankr. E.D. Tex. 2007) (holding that continuing a debtor's mining operations requires adequate protection because "mining the money" diminishes the value of the collateral). Absent sufficient protection of Deutsche Bank's interest in the Forward Agreement Collateral, Deutsche Bank will be immediately and irreparably harmed in direct contravention of its contractual and statutory rights.

**C.    Proposed Adequate Protection of Deutsche Bank's Interests in the Forward Agreement Collateral.**

21.    Accordingly, in light of the Debtors' failure to provide Deutsche Bank with adequate protection of its valid, perfected, and enforceable security interests in and liens on the Forward Agreement Collateral, including the Cash Collateral, the Court should condition the Debtors' use of the Forward Agreement Collateral upon the following terms, all as more fully set forth in the attached Proposed Order:

  a.    Adequate Protection Liens

    i.    As adequate protection for the use of Deutsche Bank's Forward Agreement Collateral that is Cash Collateral, Deutsche Bank shall have dollar for dollar replacement security interests in and liens on all of the Debtors' property, wherever located (the "Cash Collateral Adequate Protection Liens");

    ii.    Solely to the extent of, and in an aggregate amount equal to, any diminution in the value of Deutsche Bank's interests in the Forward Agreement Collateral (excluding Cash Collateral), from and after the Petition Date, calculated in accordance with section 506(b) of the Bankruptcy Code, whether or not resulting from, among other things, the use, sale or lease by the Debtors, depreciation, physical deterioration, or other decline in value, of the Forward Agreement collateral (excluding Cash Collateral) ,

and the imposition or enforcement of any stay in the Chapter 15 Cases or the Canadian Proceeding, or otherwise (collectively, "<u>Diminution in Value</u>"), Deutsche Bank shall have pursuant to section 361 of the Bankruptcy Code, replacement security interests in and liens upon (the "<u>Adequate Protection Liens</u>") all property of the Debtors, wherever located;

iii.    The Cash Collateral Adequate Protection Liens and the Adequate Protection Liens shall be *parri passu* in priority to prepetition liens. The automatic stay under section 362(a) of the Bankruptcy Code should be modified, to the extent applicable, to (i) permit the Debtors to grant the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens, (ii) incur all liabilities and obligations to Deutsche Bank and the Collateral Agent under this Order and the Forward Agreement Documents, and (iii) authorize Deutsche Bank and the Collateral Agent to enforce their respective rights and remedies under this Order and the Forward Agreement Documents;

b.    Joint and several superpriority administrative expense claim against each of the Debtors, pursuant to section 507(b) of the Bankruptcy Code, to the extent that the Cash Collateral Adequate Protection Liens and the Adequate Protection Liens do not make Deutsche Bank whole for any Diminution in Value;

c.    The Debtors shall make periodic cash adequate protection payments in an amount to be determined following the validation of the Debtors' budget by the Mining Consultant, described below, as well as accrued and unpaid fees and expenses of Deutsche Bank's legal and financial advisors, both immediately following entry of the Proposed Order, and from time to time within 10 days after receipt of invoices therefor.

d.    The Debtors shall appoint and retain the following advisors, professionals, and directors:

i.    a Chief Restructuring Officer ("<u>CRO</u>");

ii.    a financial advisor; and

iii.    a Mining Consultant (as defined in the Proposed Order).

e.    The Debtors shall satisfy certain milestones, as set forth in the Proposed Order, regarding the sale of all or substantially all of the Debtors' assets (the "<u>Sale Milestones</u>");

f.    The Debtors shall provide access to their records, assets, and management by Deutsche Bank;

g.     The Debtors shall comply with certain Reporting Requirements, as defined in the Proposed Order;

h.     The Debtors shall cooperate with any third party interested in acquiring the Debtors' assets;

i.     The Debtors shall provide advance copies of all the Debtors' pleadings at least 5 days prior to filing such pleading;

j.     The Debtors shall provide Deutsche Bank with a schedule of contracts the Debtor will seek to assume or disclaim in the CCAA Proceeding or the Chapter 15 Cases;

k.     The Debtors agree that the Monitor shall review and approve all expenses;

l.     The Debtors shall not create, incur, assume or suffer to exist any:

  i.     Indebtedness for borrowed money;

  ii.    Indebtedness for the deferred purchase price of property or service, other than goods and services purchased in the ordinary course;

  iii.   Indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired;

  iv.    Obligations under leases; and

  v.     Obligations in connection with any prepayment or derivative agreements that would qualify as an eligible financial contract under the CCAA.

m.     The Debtors shall provide detailed weekly budgets detailing the Debtors' planned use of the Cash Collateral (the "Cash Collateral Budget") and will use the Cash Collateral solely for the purposes, and up to the amounts, set forth in the Cash Collateral Budget.

## NOTICE

18.     Notice of this Motion has been given to: (a) the Foreign Representative, and (b) all parties that have filed notices of appearance in this case.  In light of the nature of the relief requested, Deutsche Bank submits that no further notice is necessary.

## CONCLUSION

19.     For the foregoing reasons, Deutsche Bank respectfully requests that the Court enter the Proposed Order granting the Motion and such other and further relief as the Court deems just and proper under the circumstances.

Dated:      Washington, DC
            July 16, 2014

**CADWALADER, WICKERSHAM & TAFT LLP**

s/ Mark C. Ellenberg
Mark C. Ellenberg, Esq.
*Admitted Pro Hac Vice*
700 6th Street, NW
Washington, DC 20001

Howard R. Hawkins, Jr., Esq.
*Admitted Pro Hac Vice*
One World Financial Center
New York, New York 10281

**HARTMAN & HARTMAN**
Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
510 West Plumb Lane, Suite B
Reno, Nevada 85909

*Attorneys for Deutsche Bank AG, London Branch*

**Exhibit A**

Proposed Order

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

```
------------------------------------------------------- x
In re:                                                   :
                                                         :
        VERIS GOLD CORP.,                                :
                                                         :
        Affects Veris Gold Corp.                         :
        Affects Veris Gold USA, Inc.                     :
        Affects Queenstake Resources, Ltd.               :
        Affects Ketza River Holdings Ltd.                :
        Affects all Debtors                              :
                                                         :
        Debtors in a Foreign Proceeding.                 :
                                                         :
                                                         :
                                                         :
                                                         :
------------------------------------------------------- x
```

Case Nos. 14-51015-btb, 14-51020-btb, 14-51021-btb, 14-51022-btb

Jointly Administered Under Case No. 14-51015-btb

Chapter 15

**ORDER PROTECTING CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO DEUTSCHE BANK AG**

Upon the motion dated July 16, 2014 (the "Motion") of Deutsche Bank AG, London Branch ("Deutsche Bank") for entry of an order, pursuant to sections 363(c)(2) and (e), 1520, and 1522 of title 11 of the United States Code (the "Bankruptcy Code"), conditioning the use by the above-captioned debtors (the "Debtors") of cash and other property in which Deutsche Bank has an interest upon the grand of adequate and sufficient protection; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") to consider the Motion having been held before this Court; and upon the record made at the Hearing and all of the proceedings before the Court; and the Court having found and determined that good and sufficient cause appearing therefor,

## THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.      *Jurisdiction and Venue.*  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1410.

B.    *The Canadian Proceeding.*  On June 9, 2014 (the "Petition Date"), the Debtors

commenced the Canadian Proceeding under the CCAA in the Canadian Court.  After a hearing

held the same day, the Canadian Court issued its *Initial Order* (the "Canadian Order"), which,

among other things, authorized the Debtors to file a plan of compromise or arrangement with the

Canadian Court, appointed Ernst & Young Inc. as the Monitor to the Canadian Proceeding (the

"Monitor"), and temporarily stayed Deutsche Bank from exercising any rights of realization it

has against the Debtors' property through July 8, 2014 without prejudice to Deutsche Bank's

right to apply to lift such stay or to seek a declaration that Deutsche Bank is not prohibited,

stayed, or restrained to the extent any of its agreements with the Debtors are declared to be

"eligible financial contracts" as defined in the CCAA.

C.    *The Chapter 15 Cases.*  On the Petition Date, the Foreign Representative filed a

*Petition for Recognition and Chapter 15 Relief* in this Court seeking a hearing on recognition of

the Canadian Proceeding, and an *Emergency Motion for Entry of an Order Granting Provisional*

*Relief Under Section 1519(a) of the Bankruptcy Code* (the "Foreign Representative's Motion")

seeking provisional relief to enjoin Deutsche Bank in the United States from exercising its rights

and remedies under the Forward Agreements (as defined below) (the "Provisional Relief").  That

same day, this Court granted the Provisional Relief sought in the Foreign Representative's

Motion, while expressly stating that it was not ruling on the issue of whether the Forward

Agreements are "forward contracts" for purposes of the Bankruptcy Code.

D.    *The Forward Agreement Documents and Obligations.*

(1)    On August 12, 2011, Deutsche Bank, as buyer, and Veris Gold U.S.A.,

Inc. ("VUSA"), as seller, entered into a Prepaid Forward Gold Purchase Agreement (the "2011

Forward Agreement").  Pursuant to the 2011 Forward Agreement, VUSA agreed to sell to

Deutsche Bank, and Deutsche Bank agreed to purchase from VUSA, 173,880 ounces of gold to be delivered monthly during the period of September 2011 through August 2015 in certain scheduled quantities.  In consideration for the gold, Deutsche Bank made a prepayment of $120 million to VUSA.  In addition, the 2011 Forward Agreement includes a gold price "collar," pursuant to which VUSA is long a price floor and short a price cap, with final strike prices to be determined at closing.  The price collar was included to guarantee a minimum and maximum price to VUSA for the monthly gold deliveries made to Deutsche Bank over the life of the transaction.  Any monthly deliveries of gold from VUSA to Deutsche Bank that would take place while the gold spot price was above the floor price but below the cap price resulted in an additional payment from Deutsche Bank to VUSA.  Payments from Deutsche Bank on the collar were due two business days following VUSA's monthly gold delivery.

(2)    Pursuant to a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing to Secure Forward Gold Purchase Agreement, dated August 12, 2011 (the "Deed of Trust"), from VUSA, as debtor, to Stewart Title of Nevada Holdings, Inc., as trustee, with Computershare Trust Company of Canada, as Collateral Agent (the "Collateral Agent"), on behalf of and for the benefit of Deutsche Bank, VUSA granted the Collateral Agent a lien on and security interest in, among other things, the fee lands, patented mining claims, unpatented mining claims and leases of mining claims that comprise the Jerritt Canyon Mine, a gold mine located in Elko County, Nevada (the "Real Property Collateral").  Pursuant to a Security Agreement, dated August 12, 2011 (the "Security Agreement" and with the Deed of Trust, the "Collateral Documents"), made by VUSA to and in favor of the Collateral Agent, on behalf of and for the benefit of Deutsche Bank, VUSA granted the Collateral Agent all of its right, title, and interest to certain personal property (the "Personal Property Collateral").  All

collateral granted or pledged by the Debtors to Deutsche Bank or the Collateral Agent pursuant to the Collateral Documents and the other Forward Agreement Documents (as defined below), including, without limitation, cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) (the "Cash Collateral"), and all proceeds, products, offspring, rents, and profits of such collateral, shall collectively be referred to herein as the "Forward Agreement Collateral".

(3)    On February 7, 2012, Deutsche Bank, as buyer, and VUSA, as seller, entered into a second Forward Gold Purchase Agreement (the "2012 Forward Agreement," and together with the 2011 Forward Agreement, the "Forward Agreements").  Pursuant to the 2012 Forward Agreement, VUSA agreed to sell to Deutsche Bank, and Deutsche Bank agreed to purchase from VUSA, 650 ounces of gold a month to be delivered monthly between March 2012 and September 2015 in certain scheduled quantities, for $20,000,000.  The 2012 Forward Agreement includes a similar gold price "collar" as provided in the 2011 Forward Agreement. The Debtors' obligations under the 2012 Forward Agreement are secured by the Forward Agreement Collateral.

(4)    The following Debtors guaranteed VUSA's obligations under the Forward Agreements:  (a) Veris Gold Corp., a British Columbia corporation ("Veris"); (b) Queenstake Resources Ltd., a British Columbia corporation ("Queenstake"); and (c) Ketza River Holdings Ltd., a Yukon corporation.

(5)    The Forward Agreements, the Collateral Documents, and any other agreements, instruments, notes, guaranties, and other documents executed in connection therewith, in each case as the same may be amended, modified, and/or supplemented from time to time in accordance with the terms thereof, are collectively referred to herein as the "Forward

Agreement Documents". All obligations of the Debtors arising under the Forward Agreement Documents, including all debts, liabilities, principal, interest, fees, charges, expenses, and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to Deutsche Bank by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "Forward Agreement Obligations."

  E. *Debtors' Stipulations Regarding the Forward Agreement Documents.* The Debtors hereby permanently, immediately, and irrevocably, admit, represent, stipulate, and agree that:

   (1) As of the Petition Date, the Forward Agreement Obligations totaled approximately $89,400,000.00. The Forward Agreement Documents and the Forward Agreement Obligations are (a) legal, valid, binding, and enforceable against each Debtor, and (b) not subject to any contest, avoidance, attack, objection, offset, reduction, disallowance, recharacterization, subordination, recoupment, defense, counterclaim, or other claim, cause of action or challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

   (2) The financing statements and other documents evidencing the security interests and liens granted or pledged by the Debtors under the Forward Agreement Documents to or for the benefit of Deutsche Bank or the Collateral Agent as security for the Forward Agreement Obligations (the "Prepetition Liens") have been properly entered into, filed, or recorded, as applicable. The Prepetition Liens constitute legal, valid, binding, enforceable, and perfected security interests in and liens on the Forward Agreement Collateral and are not subject to contest, avoidance, attack, objection, offset, reduction, disallowance, recharacterization,

subordination, recoupment, defense, counterclaim or other claim, cause of action, or challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. As of the Petition Date, the Debtors are not aware of any liens or security interests having priority over the Prepetition Liens.

(3)     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against Deutsche Bank with respect to the Forward Agreements or any other Forward Agreement Documents, whether arising at law or at equity.

(4)     The Forward Agreement Documents are "eligible financial contracts" for purposes of the CCAA.

(5)     The Forward Agreement Documents are "forward contracts" for purposes of the Bankruptcy Code. Deutsche Bank is a "forward contract merchant" for purposes of the Bankruptcy Code. Accordingly, Deutsche Bank is entitled to the protections of sections 362(b)(6), 556, 1519(f) and 1521(f) of the Bankruptcy Code with respect to exercising its contractual rights to terminate, accelerate and liquidate the Forward Agreement Documents. The contractual right of liquidation protected by sections 362(b)(6), 556, 1519(f) and 1521(f) of the Bankruptcy Code includes the right to foreclose on the Forward Agreement Collateral, in order to satisfy the Forward Agreement Obligations.

F.     *Need For Use of the Cash Collateral.*

(1)     Good cause has been shown for issuance of this Order. The Debtors need to use the Cash Collateral in order to, among other things, avoid short-term business disruptions that would threaten the Debtors viability and enterprise value, pursue a value-maximizing sale of all or substantially all of their assets, finance the ordinary costs of their operations, maintain

business relationships with vendors, suppliers, and customers, make payroll, make capital expenditures, satisfy other working capital and operational needs, and fund the administration and prosecution of the Canadian Proceeding and these Chapter 15 Cases.

(2)    Entry of this Order is in the best interest of the Debtors, their estates and creditors.  The terms of the Debtors' use of the Cash Collateral are fair and reasonable under the circumstances and reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties.  Deutsche Bank and the Collateral Agent are entitled to adequate protection, as and to the extent set forth herein, pursuant to sections 361, 362, 363, 507 of the Bankruptcy Code, as incorporated in the Chapter 15 Cases through section 1521 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Hearing, the terms of the proposed adequate protection arrangements and of the use of the Forward Agreement Collateral (including the Cash Collateral) are fair and reasonable and constitute reasonably equivalent value and fair consideration for Deutsche Bank's consent thereto.

G.    *Forbearance.*  Deutsche Bank will forbear from exercising its contractual rights to terminate, accelerate and liquidate the Forward Agreement Collateral as long as the Debtors are in compliance with this Order.  Should the Debtors violate the Order, Deutsche Bank will be free to exercise its remedies in accordance with the Forward Agreement Documents.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Approval of Motion</u>.  The Motion is GRANTED on the terms and conditions set forth in this Order.  Any objections or responses to the relief requested in the Motion that have not been previously resolved or withdrawn, waived, or settled, and all reservations of rights included in any such objections and responses, are hereby overruled on the merits and denied. This Order shall become effective immediately upon its entry.

2.      <u>Authority to Use Cash Collateral</u>.  The Debtors are authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date (as defined below) solely in accordance with the Cash Collateral Budget and the terms and conditions of this Order.  No Cash Collateral or other Forward Agreement Collateral shall be used in the Chapter 15 Cases, the Canadian Proceeding, or any other proceeding of any kind, or in any jurisdiction, directly or indirectly by any Debtor, or any other person or entity, to (a) object to, contest, or raise any defense to, or assert any challenge to the validity, perfection, priority, extent, or enforceability of any amounts due under the Forward Agreement Documents, the Forward Agreement Collateral, or the liens or claims granted under the Forward Agreement Documents or this Order, (b) investigate, assert, or prosecute any claims, defenses, or causes of action against Deutsche Bank, the Collateral Agent, or their respective agents, affiliates, representatives, attorneys, or advisors, except to contest whether an Event of Default (as defined below) has occurred or is continuing, (c) prevent hinder or otherwise delay Deutsche Bank's or the Collateral Agent's assertion, enforcement, or realization against or upon the Forward Agreement Collateral in accordance with this Order or the Forward Agreement Documents, except to contest whether an Event of Default has occurred or is continuing, or (d) seek to modify any of the rights granted to Deutsche Bank or the Collateral Agent hereunder or under the Forward Agreement Documents without the prior written consent of Deutsche Bank.

3.      <u>Adequate Protection for Deutsche Bank</u>.  As adequate protection for Deutsche Bank's interests in the Forward Agreement Collateral (including the Cash Collateral), Deutsche Bank shall receive adequate protection as follows:

a)      **Adequate Protection Liens.**

ii.     As adequate protection for the use of Deutsche Bank's Forward Agreement Collateral that is Cash Collateral, Deutsche Bank shall have,

pursuant to section 363(e) of the Bankruptcy Code, dollar for dollar replacement security interests in and liens upon (the "Cash Collateral Adequate Protection Liens") all property of the Debtors, wherever located.

iii.    Solely to the extent of, and in an aggregate amount equal to, any diminution in the value of Deutsche Bank's interests in the Forward Agreement Collateral (excluding Cash Collateral), from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, whether or not resulting from, among other things, the use, sale or lease by the Debtors, depreciation, physical deterioration, or other decline in value, of the Forward Agreement Collateral (excluding Cash Collateral), and the imposition or enforcement of any stay in the Chapter 15 Cases or the Canadian Proceeding, or otherwise (collectively, "Diminution in Value"), Deutsche Bank shall have pursuant to section 361 of the Bankruptcy Code, replacement security interests in and liens upon (the "Adequate Protection Liens") all property of the Debtors, wherever located.

iv.    The Adequate Protection Liens and the Cash Collateral Adequate Protection Liens shall be *parri passu* in priority to the Prepetition Liens. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified, to the extent applicable, to (i) permit the Debtors to grant the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens, (ii) incur all liabilities and obligations to Deutsche Bank and the Collateral Agent under this Order and the Forward Agreement Documents, and (iii) authorize Deutsche Bank and the Collateral Agent to enforce their respective rights and remedies under this Order and the Forward Agreement Documents.

b)    **Adequate Protection Superpriority Claims.**    To the extent that the Adequate Protection Liens do not make Deutsche Bank whole for any Diminution in Value and to the extent that the Cash Collateral Adequate Protection Liens do make Deutsche Bank whole, dollar for dollar, for the use of the Cash Collateral, Deutsche Bank shall have an allowed joint and several superpriority administrative expense claim against each of the Debtors (the "Adequate Protection Superpriority Claim") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all of the Debtors' property, wherever located.

c)    **Adequate Protection Payments**.    The Debtors shall make periodic cash adequate protection payments to Deutsche Bank in an amount to be determined following the

validation of the Debtors' budget assumption by the Mining Consultant, described below.  In addition, the Debtors shall pay Deutsche Bank (i) immediately following entry of this Order, a cash payment equal to all accrued and unpaid fees and expenses of Deutsche Bank's legal and financial advisors, including Cadwalader Wickersham & Taft, LLP and Hartman & Hartman, as counsel to Deutsche Bank in the Chapter 15 Cases, Stikeman Elliott LLP, as counsel to Deutsche Bank in the Canadian Proceeding, and FTI Consulting, Inc., or such other financial advisor as Deutsche Bank may retain (the "Deutsche Bank Advisor"), incurred in connection with administering, enforcing, monitoring, or taking action with respect to the Forward Agreement Documents, the Canadian Proceeding, or the Chapter 15 Cases, and (ii) from time to time, cash payments equal to all such fees and expenses of such legal and financial advisors of Deutsche Bank within ten (10) days after receipt of invoices therefor.  None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court.

d)    **Appointment of CRO, Advisors, Directors, and Managers**.    The Debtors shall appoint and retain the following advisors, professionals, and directors to advise, manage, and perform such duties as agreed upon by the Debtors and Deutsche Bank during the Canadian Proceeding and the Chapter 15 Cases:

    i.    *Chief Restructuring Officer*.    The Debtors shall appoint a Chief Restructuring Officer ("CRO") acceptable to Deutsche Bank and approved by the Canadian Court and this Court.

    ii.    *Financial Advisor*.    The Debtors shall retain a financial advisor (the "Debtors' Financial Advisor") acceptable to Deutsche Bank to conduct a marketing and sale process for all or substantially all of the Debtors' assets.

    iii.    *Mining Consultant*.    The Debtors shall agree to retain a mining consultant (the "Mining Consultant") acceptable to the CRO, the Monitor, and Deutsche Bank to prepare a life of mine report adequate to support a reasonable sale process and to validate the technical assumptions underlying the Debtors' budget.

e)        **Case Milestones**.  The Debtors shall satisfy the following milestones regarding the sale of all or substantially all of their assets (the "Sale Milestones"):  (i) on or before August 15, 2014, the Debtors shall have completed a Life of Mine plan acceptable to Deutsche Bank and shall have obtained the Mining Consultant's approval of the technical assumptions underlying the Cash Collateral Budget; (ii) on or before July 31, 2014, the Debtors shall file a motion, in form and substance acceptable to Deutsche Bank, seeking approval of procedures for submitting bids and conducting an auction with respect to the sale of all or substantially all of the Debtors' assets; (iii) on or before August 20, 2014, the Debtors shall have a completed Confidential Information Memorandum acceptable to Deutsche Bank; (iv) on or before August 15, 2014, the Canadian Court and this Court shall have entered orders, in form and substance acceptable to Deutsche Bank, approving such motion, which orders shall, among other things, establish a deadline for parties to submit binding, irrevocable bids that occurs on or before September 30, 2014 (the "Bid Deadline"); (v) within 5 days following the Bid Deadline, the Debtors shall have received at least one bid that is acceptable to Deutsche Bank; (vi) within 15 days of the Bid Deadline, an auction for all or substantially all of the Debtors' assets shall be conducted if more than one bid that is acceptable to Deutsche Bank is received by the Debtors; (vii) on or before December 15, 2014, the Canadian Court and this Court shall have entered orders, in form and substance acceptable to Deutsche Bank, approving the sale of all or substantially all of the Debtors' assets; and (viii) on or before December 30, 2014, a sale of all or substantially all of the Debtors' assets shall have been consummated.

f)        **Access to Debtors' Records, Assets, and Management.**  The Debtors shall provide Deutsche Bank with immediate, continuous, and unfettered access to the Debtors' books, records, assets, and properties for purposes of monitoring the Debtors' business and the

value of the Forward Agreement Collateral.  The Debtors shall provide Deutsche Bank with an inventory of hard assets that comprise the Forward Agreement Collateral.  The Debtors shall permit Deutsche Bank and its advisors to conduct site visits, collateral examinations, and inventory appraisals upon reasonable notice.  The Debtors shall provide the Deutsche Bank with access to management to discuss particular matters from time to time, including weekly update calls with the Monitor, the CRO, and the Debtors' Financial Advisor.

g)    **Reporting Requirements**.  In addition to the cash collateral budgets discussed in paragraph m), below, the Debtors shall provide the following financial reporting to the Monitor, who will review and promptly forward to Deutsche Bank (the "Reporting Requirements"):

  i.    Monthly unaudited financial statements and management reports;

  ii.   Statements showing a summary of financial and operating results compared to the Cash Collateral Budget and a discussion of significant variances;

  iii.  Detailed weekly rolling 13-week cash flow forecasts and a report comparing the preceding week's actual sources and uses of cash to the cash flow forecast for such week.  This report shall be broken down to include production and expenditure for mining (by mine), milling and facility expenses, capital expenditures, general and administrative expenses, and any other expenses.  The detail of such forecasts shall be agreed between the CRO, the Monitor, the Debtors, and Deutsche Bank;

  iv.   Continued provision of daily dashboard in respect of operational matters, including the daily breakdown of stocks;

  v.    Schedule of all unpaid priority payables;

  vi.   Minutes of any and all Board, Management or restructuring meetings; and

  vii.  Any other financial information reasonably requested by Deutsche Bank.

h)    **Third Party Cooperation.**  The Debtors shall provide full cooperation to any third party who may be interested in acquiring the Debtors' assets.  Such cooperation shall

include providing operational data and financial information as well as facilitating site visits for the purposes of technical due diligence.

        i)     **Drafts of Pleadings.**  The Debtors shall provide Deutsche Bank with drafts of all pleadings to be filed in the Canadian Proceeding or the Chapter 15 Cases no less than five (5) business days prior to filing such pleadings so that Deutsche Bank has a reasonable opportunity to review, comment, and consult with the Debtors.

        j)     **Schedule of Contracts.**  The Debtors shall provide Deutsche Bank with a schedule of contracts that the Debtors will seek to assume or disclaim in the Canadian Proceeding or the Chapter 15 Cases.  Any proposed amendment to such schedule shall require the approval of Deutsche Bank, the CRO, and the Monitor.

        k)     **Review and Approval by Monitor.**  The Debtors agree that the Monitor will review and approve all expenses.  In no event will payments be made on royalty obligations or to related parties.

        l)     **Additional Indebtedness.**  The Debtors shall not create, incur, assume or suffer to exist any:

        i.    Indebtedness for borrowed money, including transactions in respect or borrowings of commodities, bankers' acceptances, letters of credit, or letters of guarantee;

        ii.    Indebtedness for the deferred purchase price of property or services other than for goods and services purchased in the ordinary course of business and paid for in accordance with customary practice;

        iii.    Indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired;

        iv.    Obligations under leases; and

        v.    Obligations in connection with any prepayment or derivative agreements or instruments or any agreement or instrument which would qualify as an eligible financial contract under the CCAA.

m) **Conformity With Cash Collateral Budget.** The Debtors shall provide to Deutsche Bank detailed weekly budgets, which (a) shall specifically provide for the payment of all amounts owed to Deutsche Bank pursuant to this Order as and when due, (b) shall be subject to the approval of Deutsche Bank, and (c) may be amended by the Debtors from time to time with prior written consent from Deutsche Bank (the "Cash Collateral Budget"). The Debtors may use the Cash Collateral solely for the purposes, and up to the amounts, set forth in the Cash Collateral Budget, subject to a noncumulative variance of 5 percent for each line item for each week. Any use by the Debtors of Cash Collateral in a manner not consistent with the Cash Collateral Budget shall constitute an Event of Default (as defined below), unless Deutsche Bank otherwise consents. Each week after the first week, the budget shall include a reconciliation of actual performance to the prior week's budget.

4.    Termination Date. The Debtors' authorization to use the Cash Collateral pursuant to this Order shall terminate (the date of any such termination, the "Termination Date") on the earliest to occur of: (a) August 5,2014, if the Initial Order in the Canadian Proceeding is not, prior to that date, amended in a manner consistent with this Order by, among other things, deleting the injunction against Deutsche Bank and providing that the general stay does not apply to Deutsche Bank: (b) the date that this Order ceases to be in full force and effect or is stayed in any respect: (c) the date that any sale of all or substantially all of the Debtors' assets is consummated; (d) the effective date of a plan of compromise or arrangement in the Canadian Proceeding; (e) the date that the Forward Agreement Obligations are paid and satisfied in full; (f) December 30, 2014 and (g) the date upon which any of the following events (the "Events of Default") shall have occurred (unless waived by Deutsche Bank):

a)      The Debtors shall have failed to make any payment to Deutsche Bank within one business day after the date such payment is required by this Order;

b)      The Debtors shall have failed to (i) comply with the Cash Collateral Budget, (ii) comply with the Sale Milestones, (iii) comply with any of the Reporting Requirements, or (iv) comply with any other term, covenant, or agreement specified in this Order;

c)      Any representation or warranty made in writing by the Debtors in the Reporting Requirements (other than with respect to projected financial information) shall prove to have been incorrect in any material respect when made (or, if qualified by materiality, in any respect);

d)      Any of the Canadian Proceeding or the Chapter 15 Cases shall be dismissed or any Debtor shall file any pleading requesting such relief;

e)      An order shall be entered (i) reversing, amending, supplementing, staying, vacating, or otherwise modifying the Chapter 15 recognition order or this Order without the consent of Deutsche Bank, or (ii) avoiding or requiring repayment of any portion of any payment to Deutsche Bank or its professionals and advisors required by this Order;

f)      The Debtors shall create, incur, assume, or suffer any indebtedness or obligations not expressly permitted by this Order;

g)      The Debtors shall have filed a motion or application or adversary proceeding challenging the validity, enforceability, perfection, or priority of the liens securing the Forward Agreement Obligations or any other cause of action against and/or with respect to the Forward Agreement Documents, Forward Agreement Obligations, the Forward Agreement Collateral, or Deutsche Bank;

h)      The Debtors attempt to sell or dispose of any of their assets in a manner not permitted by this Order;

i)      The Debtors abandon any of their assets in a manner not permitted by this Order;

j)      The Debtors suspend or cease all or substantially all of their business operations.

The Debtors shall promptly provide notice to Deutsche Bank of the occurrence of any Event of Default.  On the Termination Date, the Debtors' right to use the Cash Collateral pursuant to this Order shall terminate automatically, and Deutsche Bank shall be permitted to immediately

exercise all rights and remedies provided in this Order and the Forward Agreement Documents, without regard to the automatic stay and without further order of, or application to, this Court.

5.    <u>Adequate Protection Lien Perfection</u>.    This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens without the necessity of executing, filing, or recording any financing statement, deed of trust, mortgage, security agreement, notice of lien, pledge agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens or to entitle such liens to the priorities granted herein.    Notwithstanding the foregoing, Deutsche Bank and the Collateral Agent may, in their sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens, pledge agreements, and other instruments and documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code, to the extent applicable, to permit such actions, and all such financing statements, deeds of trust, mortgages, security agreements, notices of liens, pledge agreements, and other instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 15 Cases.    The Debtors shall execute and deliver to the Collateral Agent all such financing statements, deeds of trust, mortgages, security agreements, notices of liens, pledge agreements, and other instruments and documents as Deutsche Bank or the Collateral Agent may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the Adequate Protection Liens and the Cash Collateral Adequate Protection Liens.    Deutsche Bank and the Collateral Agent may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with

any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.

6.     Preservation of Rights Granted Under the Order.  If any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed, such reversal modification, vacatur, or stay, shall not affect: (i) the validity of the Adequate Protection Liens, Cash Collateral Adequate Protection Liens, or Adequate Protection Superpriority Claims incurred before the actual receipt of written notice by Deutsche Bank of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity or enforceability of any lien authorized or created by this Order.  Notwithstanding any such reversal, modification, vacatur, or stay, any use of the Cash Collateral or incurrence of the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, or the Adequate Protection Superpriority Claims by the Debtors before the actual receipt of written notice by Deutsche Bank of the effective date of such reversal, modification, vacatur, or stay, shall be governed in all respects by the original provisions of this Order, and Deutsche Bank shall be entitled to all the rights, remedies, privileges, and benefits granted in this Order.

7.     Binding Nature of Order.  The provisions of this Order shall be binding upon the Monitor, the Debtors, their respective successors and assigns, and any trustee or other fiduciary elected or appointed as a legal representative of the Debtors or their estates or with respect to the property of any of the Debtors' estates, including the Foreign Representative.

8.     Survival of Order.  The provisions of this Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired, or discharged by, entry of any order (a) confirming   any   plan   of   compromise   or   arrangement   in   the   Canadian   Proceeding,

(b) converting any of the Chapter 15 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of the Chapter 15 Cases or the Canadian Proceeding, (d) withdrawing of the reference of any of the Chapter 15 Cases from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 15 Cases in this Court.  The terms and provisions of this Order, including any protections granted to or for the benefit of Deutsche Bank or the Collateral Agent (including the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, and the Adequate Protection Superpriority Claims), shall continue in full force and effect notwithstanding the entry of such order, and such protections for Deutsche Bank and the Collateral Agent (including the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, and the Adequate Protection Superpriority Claims) shall maintain their priority as provided by this Order and the Forward Agreement Documents (as the case may be), including any intercreditor arrangement or agreements in respect thereof, until all of the Forward Agreement Obligations have been paid and satisfied in full and discharged.

9.      506(c) Waiver.  The Debtors (on behalf of themselves and their estates) hereby irrevocably waive, and are prohibited from asserting, any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expense incurred in connection with the preservation, protection or enhancement of, or realization by Deutsche Bank or the Collateral Agent upon the Forward Agreement Collateral.

10.     No Marshaling.  Neither Deutsche Bank nor the Collateral Agent shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Forward Agreement Collateral.

11.     Section 552(b).  Deutsche Bank and the Collateral Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case"

exception under section 552(b) of the Bankruptcy Code shall not apply to Deutsche Bank or the Collateral Agent with respect to proceeds, product, offspring, rents, or profits of any of the Forward Agreement Collateral.

12.    <u>Release</u>.  The Debtors forever release, waive, and discharge Deutsche Bank and the Collateral Agent, and their affiliates, parents, subsidiaries, assigns, predecessors, and successors, together with each of the foregoing parties' respective past, present, and future officers, directors, shareholders, partners, members, employees, agents, attorneys, and professionals, from any and all claims, causes of action, suits, judgments, executions, disputes, demands, debts, obligations, liabilities, damages, offset rights, counterclaims, cross-claims, defenses, rights, choses in action, sums of money, compensation, expenses, costs and losses and all remedies in respect of the foregoing, of any type, kind, nature, description, or character, whatsoever, whether known or unknown fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, liquidated or unliquidated, mature or unmatured, and whether in contract, tort, or under any state or federal law or otherwise, at law or in equity arising out of, based upon, or related to, in whole or in part, any of the Forward Agreement Documents, the Forward Agreement Collateral, the Cash Collateral, the Forward Agreement Obligations, the Prepetition Liens, the Adequate Protection Liens, the Cash Collateral Adequate Protection Liens, the Adequate Protection Superpriority Claim, any aspect of the prepetition relationship among the Debtors relating to any of the Forward Agreement Documents, or any transaction contemplated by the Forward Agreement Documents, including, without limitation, any claims or defenses as to the extent, validity, priority, or perfection of the Forward Agreement Documents, the Forward Agreement Collateral, the Cash Collateral, the Forward Agreement Obligations, the Prepetition Liens, the Adequate Protection Liens, the Cash Collateral Adequate

Protection Liens, and the Adequate Protection Superpriority Claim, along with any actions, claims, or defenses under chapter 5 of the Bankruptcy Code, any claims or defenses regarding whether the Forward Agreement Documents constitute "eligible financial contracts" for purposes of the CCAA or "forward contracts" for purposes of the Bankruptcy Code or whether Deutsche Bank is a "forward contract merchant" for purposes of the Bankruptcy Code.

13.     <u>Jurisdiction</u>.   This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2014
            Reno, Nevada

_____
THE HONORABLE BRUCE T. BEESLEY
UNITED STATES BANKRUPTCY JUDGE